[File No. 6874.]

KITTY McLANE, Respondent, v. F. H. PEAVEY & COMPANY, a Foreign Corporation, Doing Business as Peavey Elevators, Appellant.

(8 NW (2d) 308.)

Opinion filed March 3, 1943.

*Fred E. Harris,* for appellant.
*Day, Lundberg & Stokes,* for respondent.

MORRIS, Ch. J.   This is an action for damages based upon breach of implied warranty for the sale of seed grain.   The defendant moved for a directed verdict at the close of the case and later for a judgment notwithstanding the verdict.   Both motions were denied.   No motion for a new trial was made.   The defendant appeals from the judgment entered pursuant to the verdict of the jury rendered in favor of the plaintiff.   The defendant is the owner of a grain elevator at Larimore, North Dakota, operated at the time of the transactions herein involved by Ed. Sletten, defendant's local manager.

The plaintiff is the owner of a half section of land near Larimore upon which the crops involved in this action were planted.   She lived in another part of the state.   Her husband, A. F. McLane, acted as her agent throughout the transactions resulting in this lawsuit.   The land was rented to one Earl R. Larson for the farming season of 1941 upon a contract whereby the plaintiff furnished seed and received one half of the crop.

On December 30, 1940, A. F. McLane wrote to Mr. Sletten advising him of the approximate amount of seed grain that would be needed on his wife's farm the following spring and asking if he could obtain it on credit. Receiving no reply, he again wrote Mr. Sletten on January 16, 1941. This letter also was unanswered and on January 29 he again wrote Sletten as follows:

"I have written you twice about whether we may depend upon you to supply us with enough seed for the three quarters which will be farmed by Earl L. Larson (two) and Walter Olson (one) and have not heard a word from you. Now I desire to get things fixed up in plenty of time. I am going to ask you to write me just what I may depend on.

"Another thing can you furnish us with grain which will germinate properly if we deal with you?"

"I feel sure your Company will be glad to make the necessary loan and I believe they can take security from the 1941 allotment, at least banks can do so. As the owner of this land does not live in Grand Forks County, the Gov't cannot make a seed loan to said owner. Naturally if we secure the seed from you, we would figure on trying to pay it off from the crop and we have it insured for 75% so that seems to me like you would be into clear. You and I have done business for many years and I think you do not question our doing the right thing.

"I figured it would be about $250 however it may be less than that amount. Now Ed I want to hear from you right away so that we may know exactly what you intend to do."

He wrote Sletten again on March 7, 1941. On March 10, Sletten acknowledged receipt of McLane's last letter and advised McLane that he was sure that the matter would be taken care of. On April 4, he again wrote McLane "A line to let you know your credit is 100% good for seed-grain with us."

In April, 1941, the tenant, Earl Larson, went to the elevator and received 60 bushels of durum wheat and 90 bushels of hard wheat for which he signed grain sales tickets that showed the amount of grain received and contained the following: "In consideration of the sale to me of above described uncleaned grain, I hereby assume all loss or damage resulting from Mustard or other foul or noxious seeds or impurities of any kind contained in said grain, or from the failure of said

grain, or any portion of it to germinate, provided I should conclude to use it as seed. It is mutually understood, however, that the Peavey Elevators does not sell it to me as Seed Grain."

The plaintiff contends that the grain delivered to her tenant was sold by the defendant as seed grain, that he planted it on her farm believing it to be good seed but that because of poor germination a large portion of it did not sprout and grow. She claims that as a result of the poor quality of the seed she obtained a poor crop and demands damages from the defendant for the loss she thus sustained.

As a basis for her recovery plaintiff relies on a breach of warranties of quality and fitness which the law implies. Supp. to Comp. Laws, § 6002a15.

The defendant contends that grain sales tickets that were signed by the plaintiff's tenant at the time the grain was delivered contained a waiver of all warranties and a disclaimer that the grain was sold as seed and that the plaintiff is bound thereby.

Section 6002a15, Supp. to Comp. Laws provides for warranties of quality and fitness in the following language: "(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies upon the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for that purpose."

The correspondence to which we have referred clearly indicates that A. F. McLane negotiated for the purchase of the grain in question as seed grain that the manager of defendant's elevator knew that the grain was to be used for that purpose. In fact the defendant does not contend otherwise.

The defendant asserts that no warranty exists in this case because of the statement on the grain sales tickets signed by the plaintiff's tenant, which, it is asserted, constituted the contract of sale and negatived any warranty on the part of the defendant.

The record shows that while the tenant procured delivery of the grain at the elevator he did not enter into negotiations for its purchase. It is nevertheless contended that he had ostensible authority to sign in behalf of the plaintiff the sales tickets reciting the conditions under

which the grain was delivered. This brings us to the question of the authority of the tenant. Section 6336, ND Comp. Laws 1913 says of the authority of an agent: "An agent has such authority as the principal actually or ostensibly confers upon him."

Section 6338, ND Comp. Laws 1913 says that: "Ostensible authority is such as the principal intentionally or by want of ordinary care causes or allows a third person to believe the agent to possess."

The trial court instructed the jury both with respect to implied warranty and agency in substantially the language of the statutes that we have quoted. The questions of the existence of a warranty of the grain and the agency and authority of the tenant to bind the plaintiff by signing the sales tickets were presented to the jury. In arriving at a verdict for the plaintiff the jury presumably decided these questions against the defendant. Our examination of these questions goes only to the extent of determining whether the evidence warranted the verdict.

The manager of the elevator knew from his correspondence with A. F. McLane that he was acting as agent for the plaintiff in purchasing seed grain for the plaintiff's farm and in arranging for credit. Nothing is disclosed by this correspondence that would in any way tend to limit the defendant's liability for failure to furnish seed that was unfit for the purpose for which it was intended. In the letter which we have quoted, specific inquiry was made as to the ability of the defendant to furnish grain that would germinate properly.

Ostensible authority upon which the defendant would rely is based upon the principle of estoppel. It must rest upon conduct or communications of the principal which reasonably interpreted causes a third person to believe that the agent has authority to act for and on behalf of the principal. The mere relationship of landlord and tenant existing between the plaintiff and Mr. Larson is not sufficient to establish ostensible authority to waive a warranty that the law implied as a part of the contract for the purchase of the grain. As we said in Deere & W. Co. v. Moch, 71 ND 649, 3 NW (2d) 471, 139 ALR 1270: "An implied warranty is not essentially a part of the agreement made by the parties themselves. It is imposed by operation of law and becomes a part of the contract by virtue of the statute."

In the case before us the evidence is such that the jury was warranted in determining that the defendant was not misled by any statements or conduct on the part of the plaintiff or her agent A. F. McLane that would furnish a reasonable ground for belief on Mr. Sletten's part that the tenant had authority to waive the warranty which the law implied.

The evidence is ample to support the conclusion that the plaintiff through her agent A. F. McLane relied upon the defendant to furnish seed grain that would germinate properly and that no authority either actual or ostensible was vested in the tenant to waive the warranty of fitness.

We now pass to the question of damages which involves two important features; the proper measure of damages and the evidence as to the amount thereof.

The trial court instructed the jury: "Now, generally, it may be said that the measure of damage is the difference in the value of the crop raised from the seed furnished and that of a crop such as would ordinarily have been raised from the seed had it been as impliedly warranted."

The defendant requested the court to instruct the jury: "That the amount of damage to which the plaintiff would be entitled, would be only the actual expense of planting the seed, plus the fair rental value of the land, and less the value of the grain actually grown and harvested thereon; that the plaintiff cannot recover damages for the value of the crop that might have been raised had the grain all germinated."

Section 7146, ND Comp. Laws 1913 provides: "For the breach of an obligation arising from contract the measure of damages, except when otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin."

This section is a restatement of the measure of damages for breach of contract applicable under the common law. Needham v. Halverson, 22 ND 594, 135 NW 203. While the rule may be thus easily stated

its application is frequently fraught with difficulty. The measure of damages outlined in the defendant's requested instruction is supported by considerable authority but that authority deals with cases where there was no germination and there was a total crop failure. Where there is a partial failure only, the proper measure of damages is the difference in value between the crop raised and the crop that would have been raised had the seed been as warranted—had it been reasonably fit for the use for which it was intended. The different measures to be applied depending upon whether the germination was wholly or partially defective is pointed out in Moorhead v. Minneapolis Seed Co. 139 Minn 11, 165 NW 484, LRA1918C, 391, Ann Cas 1918E 481, and later approved in Barthelemy v. Foley Elevator Co. 141 Minn 423, 170 NW 513. See also Flick v. Wetherbee, 20 Wis 393.

The object of the law is to determine as nearly as possible the amount of money that will compensate for the injury resulting from the breach of warranty. Where seed is seriously defective as to its germinating qualities but grows to a sufficient extent to prompt the husbandman to care for and harvest such crop as is produced, the loss can best be ascertained by comparing the crop that is produced with the one that would in all reasonable probability have grown and matured had the seed germinated properly. The trial court correctly stated the general and basic principle to be applied. However, the instruction must be criticized in that it fails to take into consideration any additional expenses that would have been incurred had it been necessary to harvest a full crop instead of a partial one. Fuhrman v. Interior Warehouse Co. 64 Wash 159, 116 P 666, 37 LRA(NS) 89; Cline v. Mock, 150 Mo App 431, 131 SW 710.

An analogous situation is presented by those cases dealing with the measure of damages applicable to breaches of warranty in connection with sales of fertilizer where it is generally held that the seller is answerable to the purchaser for the diminution in crop value due to the breach. Stuart v. Burlington County Farmers' Exch. 89 NJL 12, 97 A 775; Philbrick v. Kendall, 111 Me 198, 88 A 540.

The sufficiency of the evidence was challenged in the court below by a motion for directed verdict, the denial of which is specified as error

on this appeal. The correctness of the denial is thus brought before us as a question of law. Olson v. Great Northern R. Co. 56 ND 690, 219 NW 209; State v. Van Horne, 71 ND 455, 2 NW (2d) 1. The evidence in this case is sufficient to sustain the verdict in all respects except as to the quantum of damages.

The plaintiff introduced evidence from which the jury might determine the difference in bushels between the crops of durum and hard wheat that were produced and the crops that would in all reasonable probability have been produced had the seed been as warranted. By this evidence the diminution in quantity due to the breach became measurable. Damages, however, must be measured in money in order to determine the amount necessary to compensate for the injury. The plaintiff has wholly failed to reduce her damages to dollars. The only testimony in the record upon which the plaintiff relies for this proof is that of her tenant. He testified that for his share of the grain that grew upon the land and from the seed in question he got loans of 98¢ per bushel on the wheat and 95¢ per bushel on the durum. The record does not show from whom the loans were obtained or when. There is no testimony as to market value. The plaintiff contends that it is to be assumed that the tenant was referring to United States government loans. Should we assume this it would avail the plaintiff nothing. Neither the jury nor the court has any way of determining what deductions, if any, are made from the loan price for insurance, shrinkage or other subtractions that may be taken into consideration in determining the final amount of money the farmer gets. Neither is there any way of determining what concealed gratuities may be included in the loan price.

Furthermore, the record shows that under plaintiff's rental contract she was to bear 40 per cent of the cost of combining, one half of the thresh bill and one half of the cost of binder twine. The wheat was swathed and combined. The durum was cut with a binder and threshed. There is no way of determining from the record the amount of these or other expenses properly chargeable to that portion of the crop which the seed failed to produce and the loss of which the plaintiff claims as a basis for her recovery in this action.

The defects in the proof of damages which we have pointed out are

476

fatal to the verdict and judgment. They are such defects as may be remedied on another trial. The defendant is, therefore, not entitled to a dismissal of the action in this court. The judgment appealed from is reversed and a new trial granted.

CHRISTIANSON, BURR, NUESSLE, and BURKE, JJ., concur.