Richard PFLIGER, Plaintiff
and Appellee,

v.

PEAVEY COMPANY, a corporation,
Defendant and Appellant.

Civ. No. 9960.

Supreme Court of North Dakota.

Oct. 6, 1981.

William C. Severin, Bismarck, for defendant and appellant.

Rausch & Rausch, Bismarck, for plaintiff and appellee; argued by James P. Rausch, Bismarck.

PAULSON, Justice.

Peavey Company ["Peavey"] appeals from a judgment entered against it by the District Court of Burleigh County sitting without a jury on February 5, 1981, which judgment found Peavey liable for the negligent construction of a farm building on the principle of an ostensible agency and awarded Richard Pfliger ["Pfliger"] the sum of $6,057 after setting off Peavey's counterclaim. We modify the judgment of the district court and affirm it as modified.

In the early summer of 1978, Arnold Krein, a Peavey sales representative, contacted Pfliger at his farm after learning that Pfliger was interested in purchasing a steel farm building. They had a conversation about steel buildings and Krein showed Pfliger a brochure for a Circle Steel building. Pfliger asked for a bid for such a building as he needed one to present to the Agriculture Stabilization & Conservation Service in order to obtain financing.

Pfliger had secured bids from others and he told Krein that he wanted the same arrangement as he had asked from the others: he wanted the building completed. Krein said that he could prepare such a bid.[1]

---

1. The bid prepared by Krein contained the following costs:

| 48 x 73 x 16 ft. slant wall building | | |
|---|---|---|
| Less sliding door and sky lite | | $9,633.40 |
| Grain package | | 864.00 |
| Overhead door | | 1,485.00 |
| | | $11,982.40 |
| Less 10% | | 1,198.40 |
| | | $10,784.00 |
| Sales tax | | 323.52 |
| | | $11,107.52 |
| Building erection with grain liner | | 2,073.60 |

To prepare his bid Krein contacted a contractor, Miller Construction Co. ["Miller"], for estimated labor costs. Krein also contacted a concrete supplier for an estimated cost of the concrete. These contacts were made without any direction or endorsement by Pfliger.

On July 11, 1978, Pfliger ordered the building materials from Peavey and signed a customer order for the purchase. The order involved the materials for the physical structure of the proposed building, but not for concrete or labor costs.[2] On July 28, 1978, the day before the construction of the building began, Mr. James Miller, of Miller Construction, met Pfliger at the Pfliger farm. Pfliger signed a "proposal" presented by Miller for the erection of the building. This proposal provided that Miller Construction was to furnish labor for pouring and forming the concrete and for erecting the structure. Miller told Pfliger that before he begins construction on any job he asks for half of his money down, and, at that time, Pfliger paid Miller $1,889.40, one-half of the labor costs.

The next day the concrete was delivered and poured. Pfliger paid Atlas, Inc., the concrete supplier, $3,542.72. This amount differs from the original bid prepared by Krein because Pfliger specified an addition-al two inches of concrete. The floor was originally planned to have four inches of concrete but Pfliger ordered the additional two inches at the suggestion of Miller so that the floor could support parked equipment. Pfliger paid for the concrete immediately to obtain a 5 percent discount about which he was told by the Atlas, Inc., truck driver.

In addition to the $1,889.40 paid to Miller and $3,542.72 paid to Atlas, Inc., Pfliger wrote a check to Peavey on December 7, 1978, for $12,000. The memorandum on the check indicates that it was for "building and account". Pfliger had maintained an open account with Peavey for a number of years.

Peavey trucks were used only for delivery of building materials, but neither trucks nor other Peavey equipment was used in the construction of the building.

Pfliger did not supervise the construction of the building. When problems arose during the course of construction, Pfliger would contact Krein, who, in turn, would contact Miller. Problems arose from side walls which were improperly bolted together, resulting in gaps through which daylight could be seen; the roof was improperly installed and leaked; and there were prob-

---

| | |
|---|---|
| Concrete labor | 1,555.20 |
| | $14,736.32 |
| | 2,190.50 |
| | $16,926.82 |

The writing was on Elephant Brand Fertilizer stationery and there were no signatures by either party on the bid.

Peavey's answer to Pfliger's complaint raised the statute of frauds' defense, but the issue was not mentioned by Peavey on appeal. § 9–06–04, N.D.C.C. It is our view that the doctrine of part performance takes this case out of the statute of frauds.

The North Dakota Supreme Court discussed the doctrine of part performance in *Buettner v. Nostdahl*, 204 N.W.2d 187, 195 (N.D.1973) [wherein the Washington case of *Miller v. McCamish*, 78 Wash.2d 821, 479 P.2d 919 at 923, 924 (1971), quoted from an earlier Washington case, *Granquist v. McKean*, 29 Wash.2d 440, 445, 187 P.2d 623, 626 (1947)] as enunciated in the Washington court to the effect that a contract to be exempted from the statute of frauds must be proven by evidence that is clear and unequivocal and which leaves no doubt as to the terms, character, and existence of the contract; and it is further required that the "acts relied upon as constituting part performance must unmistakably point to the existence of the claimed agreement".

**2.** The customer order, signed by Pfliger, was a Peavey form. It provided for the following costs:

| [LOGO] PEAVEY COMPANY<br>Producer Service | CUSTOMER<br>ORDER |
|---|---|

[Details of Printed Form omitted]

| | | |
|---|---|---|
| 1 | 48 x 72 x 16 Slant Wall Building Spanish Gold w/white Trim—less wall lites | $9,949.80 |
| 1 | 144 ft. Grain Liner | 864.00 |
| 1 | 24″ x 13′ 6 Overhead white door | 1,535.00 |
| 1 | ea. H.D. GRD. Opener | 424.00 |
| | | $12,812.80 |
| | Less 10% | 1,281.28 |
| | | $11,531.52 |

lems with doors not fitting or operating properly. The building was not suitable for Pfliger to use for grain storage. Peavey admitted that the building was negligently constructed.

On April 25, 1978, Mr. Al Motl of Peavey came to the Pfliger farm with Arnold Krein to examine the building and its problems.

At trial Pfliger testified that the building was worth no more than a pole barn because it was unsuitable for grain storage. He valued the building at $5,000.

In determining damages, the trial judge in his memorandum opinion found Pfliger had paid the sum of $12,000 to Peavey; $1,889.40 to Miller; and $241.14 for repairs to one of the building's doors, making a total sum of $14,130.54; and it was further found that the concrete slab had no defects and was useable for all purposes. The trial judge further found that Pfliger received value in the sum of $5,000.

The trial judge concluded that Peavey Company was the principal and James Miller, doing business as Miller Construction, was the agent of Peavey Company. The trial judge further concluded that the slant wall steel building was negligently constructed and was not suitable for the use intended by Pfliger and that Pfliger had sustained damages in the amount of $9,130.54, subject to Peavey's counterclaim of $4,066.18, resulting in a judgment for Pfliger in the sum of $5,064.36, with interest from the first day of November, 1978, and costs.

The issues presented on appeal for our determination are:

1. Whether the trial court's finding that an ostensible agency relationship existed between Peavey Company as principal and Miller Construction as agent was clearly erroneous.

2. Whether the damages as calculated by the trial court are clearly erroneous.

The first issue is whether or not the finding of the trial court that Miller was the agent of Peavey on the basis of an ostensible agency is clearly erroneous.

■ The question of the existence of a principal-agency relationship is one of fact. *Midland Forge, Inc. v. Letts Industries, Inc.*, 395 F.Supp. 506 (D.C.Iowa 1975); *Northern Nevada Mobile Home Brokers v. Penrod*, 610 P.2d 724 (Nev.1980). Our review of the findings of fact is subject to the limitations of Rule 52(a) of the North Dakota Rules of Civil Procedure, which provides, in part, that:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

■ An agency relationship must be found by clear and convincing evidence, and the burden of proof when an agency is denied is upon the one who asserts that an agency exists. *Farmers Union Oil Co. of Dickinson v. Wood*, 301 N.W.2d 129 (N.D. 1980). An agency is ostensible "when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent, who really is not employed by him". § 3–01–03, N.D.C.C. "Ostensible authority is such as the principal intentionally or by want of ordinary care causes or allows a third person to believe the agent to possess." § 3–02–02, N.D.C.C. There must have been some conduct on the part of the principal reasonably resulting in the belief in the mind of the third party, that an agency existed together with a reliance thereon. *Bernard v. Madsen*, 52 N.D. 822, 204 N.W. 196 (1925). "Ostensible authority of an agent is based upon the principle of estoppel". *McLane v. F. H. Peavey & Co.*, 72 N.D. 468, 8 N.W.2d 308 (1943). "A principal is bound by acts of his agent under a merely ostensible authority to those persons only who in good faith and without ordinary negligence have incurred a liability or parted with value upon the faith thereof." § 3–03–03, N.D.C.C. In *Farmers Union Oil Co. of Dickinson v. Wood*, 301 N.W.2d 129, 134 (N.D.1980), this court set out the test to determine whether or not an apparent or ostensible agency relationship existed, as articulated in *McLane v. F. H. Peavey & Co.*, 72 N.D. 468, 8 N.W.2d 308, 310 (1943):

" 'It must rest upon conduct or communications of the principal which reasonably interpreted causes a third person to believe that the agent has authority to act for and on behalf of the principal.' "

For a more complete discussion of the above principles, see *Hagel v. Buckingham Wood Products, Inc.*, 261 N.W.2d 869, 873–877 (N.D.1977), wherein this court stated:

"We believe the principal, after allowing or permitting the creation of an ostensible agency relationship, is obligated to correct the erroneous impression left by means at least equal to, or greater than that which permitted or allowed the impression to be created.

"Failure to correct an ostensible agency relationship will make the principal liable to third parties which acted thereunder in good faith."

Peavey did nothing to keep Pfliger from continuing to believe that Miller was the agent for Peavey. In the case of the *Farmers Union Oil Co. of Dickinson v. Wood, supra* 301 N.W.2d at 134, we quoted from this court's statement in *Bernard v. Madsen*, 52 N.D. 822, 204 N.W. 196 (1925), that "an ostensible agency exists where the conduct of the supposed agent is consistent with the existence of an agency, and where, in the transaction in issue, the party with whom the supposed agent dealt was justified in assuming that the agency existed".

■ After reviewing the record we are satisfied that the trial court's determination that an ostensible agency existed between Peavey and Miller is supported by substantial evidence. From the initial contact of Mr. Pfliger, initiated by Mr. Krein of Peavey Company, it was understood that Pfliger was seeking a completed building and that he wanted no part in supervising or constructing it.

Consistent with Pfliger's desire, Krein prepared a written bid containing the estimated costs for the building materials, the labor, and the concrete. Krein was aware that this bid was to be used by Pfliger to obtain financing for the proposed building. The bids for the work to be performed by Miller and for the concrete were obtained by contacts made by Krein. After the materials for the building were obtained by Peavey, Peavey's representative directly contacted Miller to perform his services.

Pfliger had never met James Miller prior to July 28, 1978, the day before construction of the building was to begin. The concrete supplier was unknown to Pfliger until the date of delivery of the materials.

Peavey supplied the plans for the building for Miller. When problems arose during the course of the building's construction, Pfliger directed his complaints to Krein, the Peavey sales representative, who responded by contacting Miller Construction. At one time the manager of the local Peavey business, Mr. Motl, accompanied Krein to inspect the building. They left a note for Mr. Pfliger stating that they had been out to inspect the building.

The evidence shows that Peavey gave the impression that it was in control of the building process from its first contact with Mr. Pfliger to its responses to Pfliger's complaints about the construction of the building. These actions created and perpetuated the appearance of a principal and agent relationship between Peavey and Miller throughout and after the period of construction.

Peavey created this appearance of principal and agent relationship and stood to gain by it by the sale of a building. Pfliger relied on Peavey to provide him with a completed building. By want of ordinary care, Peavey caused Pfliger to believe that Miller was Peavey's ostensible agent for the erection of the building. §§ 3–01–03 and 3–02–02, N.D.C.C.; and *McLane, supra.*

If we were to rely solely upon Pfliger's separate payments at separate times to Atlas, Miller, and Peavey we would have no trouble in agreeing that no agency relationship existed between Miller and Peavey. But we must consider all of the circumstances surrounding the entire transaction from beginning to end. *Hagel v. Buckingham Wood Products, Inc.*, 261 N.W.2d 869, 876 (N.D.1978). From the outset, Pfliger made it clear that he wanted no part of the

building's construction. Krein secured bids from Miller and a concrete supplier and presented his bid for the total cost of the building to Pfliger. Pfliger relied on it by choosing to do business with Peavey rather than with the other parties from whom he had received bids.

As we stated in *Hagel, supra* 261 N.W.2d at 877, after allowing or permitting the creation of an ostensible agency relationship, the principal is required to correct the erroneous impression left by means equal to, or greater than that which permitted or allowed the impression to be created. If a principal fails to correct an erroneous impression of an ostensible agency relationship, he will be liable to third parties which acted thereunder in good faith. *Hagel, supra*, further states, 261 N.W.2d at 877: "We believe that he who creates an erroneous impression and stands to gain from the transaction should be held liable for the resulting damages, if any, to the innocent third party."

Although Krein testified that during his initial contacts with Pfliger he thought that he had mentioned to Pfliger that he, Krein, was not responsible for the labor, we do not believe that this was sufficient to correct the appearance of a principal-agency relationship in the light of all of the surrounding circumstances. Rather than correcting the impression of a principal-agency relationship with Miller, Peavey, through Krein, perpetuated this impression by Krein's further contacts with Miller to remedy defects in the construction of the building.

Peavey argues that the trial judge's denial of its motion for an offer of proof of Peavey's policy of selling building materials only, and providing no labor, was error. Such an offer of proof was to lend credibility to the testimony that Peavey did not provide labor. The trial judge denied the motion, stating that the offer of proof was in the record. We hold that this was harmless error. Rule 61, N.D.R.Civ.P.

The second issue for our review is whether the damages as calculated by the trial court are erroneous.

Peavey attacks as erroneous the following three elements which were computed in the damages award:

1. The $5,000 valuation on the building as awarded to Pfliger.

2. The $12,000 as the amount paid by Pfliger to Peavey for the building materials.

3. The failure of the trial court to deduct from the damages award costs for labor for the fully useable concrete slab.

The issue of the amount of damages is a question of fact. Therefore, our review of the trial court's award in this case is subject to the limitations imposed by Rule 52(a), N.D.R.Civ.P. The findings of fact by the court trying the case without a jury are binding upon us unless clearly erroneous. Rule 52(a), N.D.R.Civ.P. *Dobler v. Malloy*, 214 N.W.2d 510, 514 (N.D.1973). Before the Supreme Court will interfere with an award of damages, the award must be so excessive or inadequate as to be without support in the evidence. *Johnson v. Monsanto Co.*, 303 N.W.2d 86, 91 (N.D.1981). The trier of fact, however, must be furnished data sufficient to determine damages without resort to mere speculation or conjecture. *Johnson, supra* 303 N.W.2d at 95.

Peavey contends that the trial court's $5,000 valuation of the building as awarded to Pfliger is based on conjecture and speculation. We disagree, based on the following principles:

The general rule is that an owner of property may testify without qualification other than the fact of ownership as to its value. *Imus v. Huber*, 71 N.W.2d 339 (N.D.1955); *In re Heart River Irrigation District*, 78 N.D. 302, 49 N.W.2d 217 (1951). In *Alm Construction Co. v. Vertin*, 118 N.W.2d 737 (N.D.1962), an owner of an existing building and parking lot was qualified to testify as to its value. This rule of an owner's competency to testify as to the value of property is also applicable to personal property. *Smith v. Riedinger*, 95 N.W.2d 65 (N.D.1959).

Based on the above principles, Pfliger was competent to testify as to the value of the building. His competency is further reinforced by his past experiences as an inspector of grain and building loss claims for the United States Department of Agriculture and as tax assessor for Burleigh County. The rule is stated in 31 Am. Jur.2d 686 as follows: "The fact that ownership is coupled with experience presents no problems to admitting the testimony of an owner as to the value of a chattel, even though he may not qualify as an expert". On similar principles, it is generally recognized that an owner of real property, by virtue of his ownership, is presumed to have special knowledge as to its value and is therefore competent to testify as to its value. 31 Am.Jur.2d 696. This rule has been extended to owners of buildings. *George v. Odenthal*, 58 N.D. 209, 225 N.W. 323 (1929) (removeable buildings).

Pfliger based his opinion on the cost of a pole barn of comparable size because as constructed the building was suitable only for use as a pole barn. The fact that the value Pfliger set upon the building was its value to him as a pole barn does not destroy the probative value of his testimony, but was a factor for the trial judge to consider. *Department of Transportation v. Brown*, 155 Ga.App. 622, 271 S.E.2d 876 (1980).

Pfliger also stated that he based his opinion of the building's value, in part, on the estimate for repairs prepared by EEE, Inc. This was received into evidence over hearsay objection by Peavey. We have found no rule which disqualifies an owner from testifying to the value of his own property merely because of some reliance upon information from another. *Baber v. Dennis*, 66 Ohio App.2d 1, 419 N.E.2d 16 (1979).

The value of articles is a question of fact. *Ackerman v. Fischer*, 79 N.D. 51, 54 N.W.2d 734 (1952). Once again we point out that we are unable to overturn a finding of fact unless it is clearly erroneous. Rule 52(a), N.D.R.Civ.P. It is our view on the record that the trial judge's valuation of the building as received by Pfliger at $5,000 is supported by substantial evidence and is not clearly erroneous.

Peavey's next attack on the award of damages was the trial court's allowance for $12,000 as the amount paid by Pfliger for the building materials. Pfliger's check to Peavey for $12,000 indicates in the lower lefthand corner thereof that the payment was for the "building and account", the account mentioned being Pfliger's open account that he had maintained with Peavey for many years, as well as being the account for which Peavey counterclaimed and was allowed to setoff from Pfliger's damage award.

There are two items in evidence which indicate possible costs for the building materials: the initial bid and the Peavey customer order form; neither of them stated the cost at $12,000. The bid projected the costs at $11,107.52 and the customer order indicated the actual cost of the materials at $11,531.52. This evidence shows that the $12,000 award for the cost of the building materials is $468.48 more than the $11,531.52 actual costs, and the judgment shall be reduced accordingly.

We agree with the appellant, Peavey, with respect to the trial court's failure to deduct from the damages award the costs for the labor for forming and finishing the concrete. Pfliger was awarded $1,889.40, his down payment to Miller, as the amount he paid out for labor. In his memorandum opinion the trial judge stated:

> "The Court in considering these values has excluded all sums either expended for concrete or the value of the concrete as it appears no defects are contained therein and said slab is fully useable for all purposes."

The proposal for the costs of labor by Miller divided the overall labor costs into three parts: $2,073.60 for erection of the building; $1,555.20 for forming and concrete finishing; and $150.00 for door installation. The trial court, however, neglected

to deduct any amount of money as labor costs for the concrete forming and finishing when calculating the damages award. Failure to credit any labor costs for forming and finishing the concrete against the $1,889.40 down payment that Pfliger was awarded for labor costs in his damages award serves to give Pfliger free labor for the slab at Peavey's expense. This would indicate that Pfliger's entire $1,889.40 down payment went into the costs of labor for the building only and that none of the down payment money was attributable to the costs for forming and finishing the concrete slab.

We find that the trial court erred in this matter and the award for the costs of labor shall be reduced by the proportion which the cost of labor for forming and finishing the concrete ($1,555.20) bears to the total costs for labor ($3,778.80), i. e., by the factor 0.41. Multiplying the $1,889.40 award for labor costs by the factor 0.41 results in the sum of $774.65 as the proportional amount paid for labor on the concrete.

For the reasons stated herein, the judgment of the district court is modified to deduct from the amount due Richard Pfliger from Peavey Company the sum of $1,243.13, representing the proportional cost of the labor for forming and finishing the concrete slab, and the difference between the $12,000 award for building materials and their actual cost. Rule 35 of the North Dakota Rules of Appellate Procedure.

The judgment is therefore reduced from $5,064.33 to $3,821.20, Pfliger to have interest from the first day of November, 1978, and costs taxed and allowed in the sum of $195. As so modified, the judgment is affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.