Keith JOHNSON d/b/a Johnson Oil Company, Plaintiff and Appellant,

v.

PRODUCTION CREDIT ASSOCIATION OF FARGO, North Dakota, Defendant and Appellee.

Civ. No. 10480.

Supreme Court of North Dakota.

Feb. 23, 1984.

Craig E. Johnson, of Wegner, Fraase, Nordeng & Johnson, Fargo, for plaintiff and appellant.

Renee J. Homuth, of Pancratz, Yuill, Wold, Johnson & Feder, Fargo, for defendant and appellee.

VANDE WALLE, Justice.

This is an appeal by Keith Johnson from a judgment of dismissal entered on an order granting the motion of Production Credit Association [PCA] for a directed verdict of dismissal. The issues raised are whether or not the court erred in granting PCA's motion for a directed verdict and in denying Johnson's similar motion. We affirm.

Douglas Olstad, a PCA borrower since 1977, began 1980 owing PCA, which had a security interest in all of his crops, approximately $67,000. PCA agreed to advance Olstad an additional $75,000 for operating funds in 1980.

Johnson, a retail distributor of petroleum products, started supplying Olstad, a farmer, with fuel in 1977. Olstad began 1980 owing $4,591.99 to Johnson. By May 1, Olstad owed Johnson $10,786.49. On May 2, 1980, Olstad paid Johnson $6,000. When Olstad's fuel bill reached $15,341.76 in the fall of 1980, Johnson informed Olstad that he wouldn't supply any more fuel and that he intended to file a fuel lien.[1] Olstad had not yet finished harvest and had spent the entire $75,000 advanced him by PCA.

Olstad met with James Rausch, a PCA loan officer, at the PCA office on September 29, 1980, and they discussed funds for securing additional fuel to finish harvest. Rausch requested Olstad to call Johnson and ask if he would accept $5,000 and furnish fuel until harvest was over.

Olstad telephoned Johnson from the PCA office and reached an agreement, the substance of which is disputed, with Johnson. PCA thereafter sent a check for $5,000 to Johnson, who then supplied additional fuel in the amount of $2,410.84.

Johnson asserts that PCA, through Olstad, agreed to pay $5,000 down and the balance of Olstad's fuel bill after harvest if Johnson would continue to supply fuel to enable Olstad to finish harvest. PCA asserts that it agreed to lend Olstad only an additional $5,000 to secure fuel to finish harvest.

Johnson brought suit against PCA[2] for the balance remaining due on Olstad's fuel bill. Concluding that Johnson had failed to establish a prima facie case of an agency relationship, actual or ostensible, between PCA and Olstad, the trial court granted PCA's motion for a directed verdict of dismissal after Johnson rested.

We said in the Syllabus in *Askew v. Joachim Memorial Home*, 234 N.W.2d 226, 229–230 (N.D.1975):

---

1. Presumably, the fuel lien referred to is that afforded by Section 35-08-04, N.D.C.C.

2. Olstad filed a petition in the United States Bankruptcy Court, District of North Dakota, in 1981 and is not a party to this action.

"10. A motion for a directed verdict is to be denied unless the evidence is such that reasonable men, without weighing the credibility of witnesses or otherwise considering the weight of the evidence, could not disagree upon the conclusion to be reached.

"11. A mere scintilla of evidence in favor of the party against whom the motion for a directed verdict is made does not preclude the granting of the motion.

"12. A motion for a directed verdict should not be granted unless the moving party is entitled to a judgment on the merits as a matter of law. In determining whether or not the moving party is entitled to a judgment on the merits as a matter of law, the evidence should be evaluated in the light most favorable to the party against whom the motion is made."

See also *Farmers Co-op. Elevator of Cavalier v. Lemier*, 328 N.W.2d 833 (N.D.1982).

■ The question to be answered on a motion for a directed verdict is whether or not there is evidence upon which the jury could properly find a verdict for the party against whom the motion is made. 9 Wright & Miller, *Federal Practice and Procedure:* Civil § 2524, p. 543 (1971).

■ A directed verdict is granted as a matter of law, which is fully reviewable on appeal. *Haggard v. OK RV Sales*, 315 N.W.2d 475 (N.D.1982).

In *McCarney v. Knudsen*, 342 N.W.2d 380, 382 (N.D.1983), we recently noted that directed verdicts should be "sparingly granted" and quoted the following statement in *Starr v. Morsette*, 236 N.W.2d 183, 189 (N.D.1975):

"... It is a better practice to let the case go to a jury verdict because the trial court may then consider postverdict motions on the basis of a complete record, and any appellate court is in a position to reinstate or affirm or modify the verdict, if it disagrees with the trial court's disposition, and another trial may thus be avoided. See 5A Moore's *Federal Practice*, § 50.05[3]."

After evaluating the evidence presented at trial in the light most favorable to Johnson, we nevertheless affirm the judgment entered upon the trial court's order granting PCA's motion for a directed verdict of dismissal.

■ In order to prevail, Johnson was required to establish that Olstad was acting as PCA's agent in dealing with Johnson and that Olstad had bound PCA to paying the fuel bill Olstad owed to Johnson. Johnson did not meet this burden.

The relatively recent opinions in *Pfliger v. Peavey Co.*, 310 N.W.2d 742 (N.D.1981), and *Farmers Union Oil Co. v. Wood*, 301 N.W.2d 129 (N.D.1980) distilled the relevant statutory and decisional law to be applied when the existence of an agency relationship is asserted. In *Farmers Union Oil Co. v. Wood, supra*, 301 N.W.2d at 133–134, we said:

"In *Lander v. Hartson*, 77 N.D. 923, 47 N.W.2d 211 (1951), we held that a presumption exists that a person acts for himself and not as the agent of another. Where the existence of an agency relationship is denied the burden of proof is upon the party who affirms its existence. The burden of proof, *i.e.*, the burden of persuasion, in such cases is clear and specific—clear and convincing. In *Hagel v. Buckingham Wood Products, Inc.*, 261 N.W.2d 869 (N.D.1977), we stated that a person acts in good faith and without ordinary negligence if the third person uses reasonable diligence and prudence in ascertaining whether the agent acts within the scope of his authority. The mere assumption of authority will not bind the principal. In *Bernard v. Madsen*, 52 N.D. 822, 204 N.W. 196 (1925), the court held that an ostensible agency exists where the conduct of the supposed agent is consistent with the existence of an agency, and where, in the transaction in issue, the party with whom the supposed agent dealt was justified in assuming that the agency existed. In *McLane v. F.H. Peavey & Co.*, 72 N.D. 468, 8 N.W.2d 308 (1943), this court set

down a test to determine whether or not an apparent or ostensible agency relationship existed, 'It must rest upon conduct or communications of the principal which reasonably interpreted causes a third person to believe that the agent has authority to act for and on behalf of the principal.' *McLane, supra,* 8 N.W.2d at 310.''

In *Pfliger v. Peavey Co., supra,* 310 N.W.2d at 745–746, we said:

"An agency relationship must be found by clear and convincing evidence, and the burden of proof when an agency is denied is upon the one who asserts that an agency exists. *Farmers Union Oil Co. of Dickinson v. Wood,* 301 N.W.2d 129 (N.D.1980). An agency is ostensible 'when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent, who really is not employed by him'. § 3–01–03, N.D.C.C. 'Ostensible authority is such as the principal intentionally or by want of ordinary care causes or allows a third person to believe the agent to possess.' § 3–02–02, N.D.C.C. There must have been some conduct on the part of the principal reasonably resulting in the belief in the mind of the third party, that an agency existed together with a reliance thereon. *Bernard v. Madsen,* 52 N.D. 822, 204 N.W. 196 (1925). 'Ostensible authority of an agent is based upon the principle of estoppel'. *McLane v. F.H. Peavey & Co.,* 72 N.D. 468, 8 N.W.2d 308 (1943). 'A principal is bound by acts of his agent under a merely ostensible authority to those persons only who in good faith and without ordinary negligence have incurred a liability or parted with value upon the faith thereof.' § 3–03–03, N.D.C.C. ...''

"[A] third person dealing with a known agent must bear the burden of determining for himself, by the exercise of reasonable diligence and prudence, the existence or non-existence of the agent's au-

thority to act in the premises.'' 3 Am. Jur.2d, *Agency,* § 78, quoted in *Transamerica Insurance Co. v. Standard Oil Co.,* 325 N.W.2d 210, 214 (N.D.1982), and *Hagel v. Buckingham Wood Products, Inc.,* 261 N.W.2d 869, 875 (N.D.1977).

▮▮▮ Insofar as is pertinent here, the foregoing decisions and the statutes they analyze may be summarized as follows: (1) One is presumed to act for himself and not as the agent of another; (2) One who deals with an agent does so at his peril; (3) Where the existence of an agency relationship is denied, the burden of proof is upon the party affirming its existence to establish it by clear and convincing evidence; (4) The existence of an apparent or ostensible agency must rest upon conduct or communications of the principal which, reasonably interpreted, causes a third person to believe that the agent has authority to act for and on behalf of the principal; and (5) A third person dealing with a known agent must determine for himself, by the exercise of reasonable diligence and prudence, the existence or nonexistence of the agent's authority to act.

After the trial court sustained an objection to Johnson's testifying as to what Olstad told Johnson in their telephone conversation, Johnson made the following offer of proof[3] through his testimony:

"Q  You said you got a telephone call—first of all, Keith, did you tell Doug that you wouldn't supply him with more fuel?

"A  Correct.

"Q  And what was the reason for not supplying him with more fuel?

"A  Well, because his bill was past due.

"Q  Did you then get a telephone call from Doug asking for more fuel?

"A  Yes.

"Q  Where did he say he was calling from?

---

**3.**  By quoting the offer of proof, we do not imply that the trial court erred in making the ruling that led to the offer of proof. We quote the offer of proof because it succinctly shows what

agreement Johnson thought he had with PCA and upon what he relied in reaching the conclusion that he had that agreement.

"A   He was calling from the PCA office.

"Q   What was the reason for his call?

"A   To get more—to see if I would take more money to advance him fuel to get the rest of the crop off.

. . . .

"Q   (Mr. Johnson continuing) What did he tell you?

"A   He said he was in the PCA office and PCA wanted to know if I would take a partial payment of $5,000 and then they would pay the rest when the harvest came in.  And I said to him that would be okay.  And I heard him turn around and say to somebody that that was all right.  So we had a—I felt we had a deal.

"Q   Did you advance fuel to him right away after that conversation?

"A   I advanced fuel when I got the money.  The same day.

"Q   Who'd the money come from?

"A   It came from PCA.

"Q   And was it drawn on PCA's account?

"A   Well, it was a check from PCA.  And I don't know whose account it was on.  I have no way of knowing that.

"Q   In what amount was the check for?

"A   $5,000.  I felt it confirmed our deal because I heard him talking to somebody in the office."

Johnson also testified that because he thought he had an agreement with PCA that PCA would pay the balance of Olstad's fuel bill after the crop came in he didn't file a fuel lien until March 1 of the following year and also that that was why he continued to advance fuel to Olstad.

Thus, it is clear that Johnson relied on (1) Olstad's statement to him that Olstad was calling from the PCA office; (2) Olstad's statement that if Johnson would take a partial payment of $5,000 PCA would pay the rest when the harvest came in; (3) his hearing Olstad "say to somebody that that was all right"; and (4) his receipt of PCA's check for $5,000.

As we have already said, the existence of an apparent or ostensible agency must rest upon conduct or communications of the principal which, reasonably interpreted, causes a third person to believe that the agent has authority to act for and on behalf of the principal.  The only act or communication by PCA of which Johnson was aware was PCA's act of sending Johnson a check for $5,000.  The other acts or communications that Johnson relied upon were made by Olstad, although it is undisputed that Olstad did make the telephone call from the PCA office.  Johnson does not contend that he relied upon any statement of PCA.  Johnson's receipt of the check from PCA showed only that Olstad was making an arrangement with PCA to secure funds for additional fuel when Olstad called Johnson.

■   Where the existence of an agency relationship is denied, the burden of proof is upon the party affirming its existence to establish it by clear and convincing evidence.  Because PCA has denied the existence of an agency relationship, Johnson must establish its existence by clear and convincing evidence, which must rest upon conduct or communications of PCA.

The requirement of clear and convincing evidence was explained in *Zundel v. Zundel*, 278 N.W.2d 123, 130 (N.D.1979):

"[U]nder the clear and convincing standard, the evidence must be such that the trier of fact is reasonably satisfied with the facts the evidence tends to prove as to be led to a firm belief or conviction. [Citations omitted.]

. . . .

"... If the record contains substantial evidence sustaining the decision of the trial judge that may fairly be said to comply with the requirement that the proof be clear and convincing, this court will not substitute its judgment for that of the trial court."  [Citations omitted.]

■   Upon evaluating the evidence in the light most favorable to Johnson, we conclude that reasonable men could not disagree upon the conclusion to be reached.

The evidence of an agency relationship was insufficient for the jury to properly find a verdict for Johnson. While the existence of a principal-agent relationship is a question of fact [*Pfliger v. Peavey Co., supra*], "[w]hen the evidence is such that reasonable men can draw but one conclusion therefrom, a question of fact becomes a question of law." *Malarchick v. Pierce*, 264 N.W.2d 478, 479 (N.D.1978). In our view, the record evidence is such that reasonable men could draw but one conclusion therefrom: that Johnson did not establish the existence of an agency relationship between PCA and Olstad by clear and convincing evidence resting upon conduct or communications of PCA which Johnson could reasonably have interpreted to mean that Olstad had authority to bind PCA to pay the balance of Olstad's fuel bill to Johnson.

Johnson's assertion that Olstad was an actual agent with authority to reach some kind of agreement with Johnson to ensure a continued fuel supply is unavailing. We have already noted that one who deals with an agent does so at his peril and that a third person dealing with a known agent must determine for himself, by the exercise of reasonable diligence and prudence, the existence or nonexistence of the agent's authority to act. Johnson testified that he didn't hear Rausch say anything during the telephone conversation between Olstad and Johnson. Johnson also testified that he didn't speak to Rausch or try to confirm the agreement with either Rausch or Bernie Johnson at PCA. Aside from the question of whether or not Olstad was a known agent of PCA, it is clear that Johnson did not exercise reasonable diligence or prudence in determiring for himself the existence or nonexistence of Olstad's authority to act to bind PCA to pay the balance of Olstad's fuel bill.

Our determination that the trial court properly granted PCA's motion for a directed verdict of dismissal disposes of Johnson's assertion that the court erred in not granting Johnson's motion for a directed verdict on the basis of unjust enrichment.

For the reasons stated, the judgment is affirmed.

ERICKSTAD, C.J., and PEDERSON, GIERKE and SAND, JJ., concur.