**RED RIVER COMMODITIES, INC.,**
**Plaintiff and Appellee,**

v.

**Kelby EIDSNESS, Defendant**
**and Appellant.**

**Civ. No. 890311.**

Supreme Court of North Dakota.

Aug. 1, 1990.

Yuill, Wold, Johnson & Feder, Fargo, for plaintiff and appellee; argued by Robert A. Feder.

Freed, Dynes, Reichert & Buresh, PC, Dickinson, for defendant and appellant; argued by Ronald A. Reichert.

MESCHKE, Justice.

Red River Commodities, Inc. (RRC) sued Kelby Eidsness for breach of his contract to grow and to deliver sunflowers. The trial court awarded RRC judgment for $25,-800.11. Kelby appealed. We reverse and remand for a new trial.

In early 1988, Kelby signed "Confection Sunflower Production" contract No. 242 with RRC. RRC agreed to purchase 250,-000 pounds from Kelby at a floor price of 11.25 cents per pound, and Kelby agreed, as "The Grower," to "plant a minimum of 250 acres to cover contracted lbs." Because of drought, Kelby grew and delivered only 75,084 pounds. In December 1988, RRC sued Kelby for his failure to deliver the contracted balance of 174,916 pounds.

At the trial without a jury, the main dispute was whether the drought excused Kelby's failure to deliver the remaining pounds. The contract contained an excuse clause for "acts of God." RRC's position was that it had not received "Certified Mail" notice from Kelby about his shortfall as the excuse clause stipulated. Kelby's position was that RRC had actual knowledge because he had orally notified RRC's agent, Richard Frith, about his poor crop in September before harvest. RRC insisted that Frith "was not a contracting agent. He [had] no authority to bind this organization in any way, shape, manner or form. He [had] no apparent authority."

The trial court ruled that Frith was "not an agent of [RRC] insofar as production, acts of God, waivers, and the like are concerned." The trial court found that Kelby was "not justified in assuming that [he was] not obligated to advise [RRC] of any shortfall caused by an act of God." The trial court determined that Kelby breached his contract "by failing to give the proper notice of low production or the inability to satisfy the contract[ ]; specifically, paragraph 8, other causes." Finding that RRC purchased replacements, the trial court held that Kelby was liable to RRC for the difference between the cost of cover at 26 cents per pound and the contract price of 11.25 cents per pound. Based on 14.75 cents for each of the 174,916 pounds undelivered, the trial court awarded damages of $25,800.11 to RRC. Kelby appealed.

On appeal, Kelby argues that the trial court erroneously determined that Frith was not RRC's agent, that Frith's knowledge of Kelby's poor production from drought was sufficient notice to RRC, and that, therefore, the trial court should have excused Kelby from the remainder of his contract. RRC responds that Frith was not its agent "for notice under the contract" and that Frith's knowledge was irrelevant because Kelby did not properly notify RRC by certified mail.

■ The Uniform Commercial Code chapter on Sales is the primary law on transactions in goods, including growing crops. NDCC 41–02–02 (UCC 2–102), 41–02–05(2) (UCC 2–105). Forward crop contracts, like this sunflower contract, are commercially important to both farmers and grain dealers. *See Red River Commodities, Inc. v. George Eidsness,* 459 N.W.2d 811, 814 (N.D.1990). In this case, we are largely guided by the Uniform Commercial Code but, as NDCC 41–01–03 (UCC 1–103) allows, principles of the law of agency and of contract supplement the UCC.

■ Impossibility caused by casualty or commercial impracticability caused by failure of presupposed conditions excuses performance of contracts for sale of goods.

NDCC 41–02–76 (UCC 2–613),[1] 41–02–78 (UCC 2–615),[2] 41–02–79 (UCC 2–616).[3] Under NDCC 41–02–78, unless a seller has assumed a greater obligation, nondelivery "in whole or in part" is excused "if ... made impracticable by the occurrence of a contingency the nonoccurrence of which was a basic [contract] assumption," and if the seller "seasonably" notifies the buyer. Uniform Commercial Code § 2–615, 1B U.L.A. 196–97, Official Comment 9 (1989) says:

> The case of a farmer who has contracted to sell crops to be grown on designated land may be regarded as falling either within the section on casualty to identified goods or this section, and he may be excused, when there is a failure of the specific crop, either on the basis of the destruction of identified goods or because of the failure of a basic assumption of the contract.

1. NDCC 41–02–76 says:
   *Casualty to identified goods.* Where the contract requires for its performance goods identified when the contract is made, and the goods suffer casualty without fault of either party before the risk of loss passes to the buyer, or in a proper case under a "no arrival, no sale" term (section 41–02–41) then:
   1. If the loss is total the contract is avoided.
   2. If the loss is partial or the goods have so deteriorated as no longer to conform to the contract the buyer may nevertheless demand inspection and at his option either treat the contract as avoided or accept the goods with due allowance from the contract price for the deterioration or the deficiency in quantity but without further right against the seller.

2. NDCC 41–02–78 says:
   *Excuse by failure of presupposed conditions.* Except so far as a seller may have assumed a greater obligation and subject to section 41–02–77 on substituted performance:
   1. Delay in delivery or nondelivery in whole or in part by a seller who complies with subsections 2 and 3 is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the nonoccurrence of which was a basic assumption on which the contract was made or by compliance in good faith with any applicable foreign or domestic governmental regulation or order whether or not it later proves to be invalid.
   2. Where the causes mentioned in subsection 1 affect only a part of the seller's capacity to perform, he must allocate production and

*See Tallackson Potato Co., Inc. v. MTK Potato Co.,* 278 N.W.2d 417, 424, n. 6 (N.D. 1979); Comment, *Crop Failures and Section 2–615 of The Uniform Commercial Code,* 22 S.D.L.Rev. 529 (1977); Bugg, *Crop Destruction and Forward Grain Contracts: Why Don't Sections 2–613 and 2–615 of the U.C.C. Provide More Relief?,* 12 Hamline L.Rev. 669 (1989); 21A Am. Jur.2d *Crops* § 51 (1981). A crop failure excuses performance of a farmer's forward crop contract unless the farmer has assumed a greater obligation.

■ Kelby's contract with RRC excused performance for "acts of God ... or other causes beyond the control of the parties":
> 8. Fire, strikes, accidents, acts of God and public enemy, or other causes beyond the control of the parties hereto, shall excuse them from the performance of this contract. Should said events occur, either party is to notify the other within 10 days of the event by Certified

deliveries among his customers but may at his option include regular customers not then under contract as well as his own requirements for further manufacture. He may so allocate in any manner which is fair and reasonable.
   3. The seller must notify the buyer seasonably that there will be delay or nondelivery and, when allocation is required under subsection 2, of the estimate quota thus made available for the buyer.

3. NDCC 41–02–79 says:
   *Procedure on notice claiming excuse.*
   1. Where the buyer receives notification of a material or indefinite delay or an allocation justified under section 41–02–78 he may by written notification to the seller as to any delivery concerned, and where the prospective deficiency substantially impairs the value of the whole contract under the provisions of this chapter relating to breach of installment contracts (section 41–02–75), then also as to the whole:
      a. Terminate and thereby discharge any unexecuted portion of the contract; or
      b. Modify the contract by agreeing to take his available quota in substitution.
   2. If after receipt of such notification from the seller the buyer fails so to modify the contract within a reasonable time not exceeding thirty days the contract lapses with respect to any deliveries affected.
   3. The provisions of this section may not be negated by agreement except insofar as the seller has assumed a greater obligation under section 41–02–78.

Mail. Grower shall be obligated to notify RRC and the contracting representative identified below. Excuse from performance of this contract is dependent upon delivery of this notice.

Thus, non-occurrence of the loss of Kelby's crop was a basic assumption of this contract. Kelby did not assume the risk of performing if his crop was affected by causes beyond his control, but he did agree to give RRC notice of the occurrence of adverse events in a certain way, in writing by certified mail.

The UCC directs only that "[t]he seller must notify the buyer seasonably" of nondelivery if impracticable. NDCC 41–02–78(3). RRC stresses that this contract conditioned excuse from performance upon delivery of notice of the event by certified mail. Kelby argues that he did not need to strictly comply with the contracted form of notice by certified mail because he gave RRC actual notice about the effect of his poor crop by telling Frith, its agent, before harvest.

The trial court ruled that Frith was not RRC's agent for purposes of notice for excuse and that written notice to RRC by certified mail was made indispensable by the contract. The trial court determined that "Paragraph Eight ... calls for notification in the event of the occurrence of an act of God or other untoward happenstance beyond the control of the parties," and ruled that Kelby "gave no proper notification...." We believe that the trial court incorrectly applied the law in making its findings.

By delivering all of the sunflowers that he did produce, Kelby fulfilled his contract to the extent that the supervening contingency of the drought permitted. If, by Kelby's notice to its agent, RRC actually and seasonally knew that Kelby's sunflower harvest and deliveries would be reduced because of the drought, it is doubtful that RRC was harmed or prejudiced by the lack of a particular form of notice. *See Ireland's Lumber Yard v. Progressive Contractors*, 122 N.W.2d 554, 566 (N.D.1963); *Robertson Lumber Co. v. Progressive Contractor's, Inc.*, 160 N.W.2d 61, 78–79

(N.D.1968). Through misapprehension of the law of contracts and of agency, the trial court did not weigh the evidence of actual knowledge communicated through RRC's agent.

Under the UCC, actual knowledge is notice of a fact.

A person has "notice" of a fact when:
a. He has actual knowledge of it;
b. He has received a notice or notification of it; or
c. From all the facts and circumstances known to him at the time in question he has reason to know that it exists.

NDCC 41–01–11(25) (UCC 1–201). Generally, "actual knowledge supersedes the requirement of notice." 6 Williston on Contracts, Third Edition § 887B, p. 509 (1962). If the purpose of certified mail notice was fulfilled by Kelby's actual notice to the agent and by actual knowledge of RRC (other than through generalized knowledge of drought conditions), the departure from the form of notice was insignificant and trifling. Restatement (Second) of Contracts § 229, comments b, c, and illustration 2 (1979). If Kelby seasonably notified RRC's agent, who reported that fact to his principal, any breach from failure to notify in a particular way was insubstantial and not a material breach. Restatement (Second) of Contracts § 241 (1979). *See also First National Bank of Belfield v. Burich*, 367 N.W.2d 148, 153 (N.D.1985). Therefore, the evidence about agency, actual notice to the agent, and actual knowledge by RRC were more important in this case than the trial court realized.

There was considerable evidence that Frith was RRC's agent for this transaction, but the trial court treated it as irrelevant. Frith solicited the crop contract from Kelby for RRC. The written contract expressly limited Frith's power to bind RRC to the initial contract that he solicited:

The signature of the contracting representative does not bind Red River Commodities, Inc. upon signing of this document.... The contracting representative identified below does not have the authority to alter or vary the terms of

this agreement. He is not an agent of RRC.

Nevertheless, after the contract was made, Frith frequently contacted growers for RRC to help with their production problems. Frith testified that he followed his contracts and did whatever was necessary to help insure delivery by the grower.

Frith talked to growers, inspected fields, and reported to RRC. RRC's manager testified that Frith's duties included observing the growers' crops and reporting back to him, and that Frith was his "go between" with growers such as Kelby. RRC's manager testified that he received letter reports from Frith. Whether he was specifically called an agent or not, Frith acted as an agent. However, the trial court did not consider this evidence, ruling that Frith was "an independent sales representative" and "not an agent ... insofar as production, acts of God, waivers, and the like are concerned."

■ RRC's characterization of Frith as "independent" of RRC is not controlling. How a principal and agent describe their relationship between themselves does not regulate their relationship to others. *Fleck v. Jacques Seed Co.*, 445 N.W.2d 649, 651 (N.D.1989); *Belgarde v. Rosenau*, 388 N.W.2d 129, 130 (N.D.1986) (" 'If an act done by one person on behalf of another is in its essential nature one of agency, then he is an agent regardless of the title bestowed upon him....' "). We summarized other related agency principles in *Jacques Seed Co.*:

An agency "is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent, who really is not employed by him." NDCC 3–01–03. An ostensible agency exists where the conduct of the supposed agent is consistent with an agency, and where, in a particular transaction, someone is justified in dealing with the supposed agent. *Farmers Union Oil Co. v. Wood*, 301 N.W.2d 129, 134 (N.D.1980). An apparent or ostensible agency "must rest upon conduct or communications of the principal which, reasonably interpreted, causes a

third person to believe that the agent has authority to act for and on behalf of the principal." *Johnson v. Production Credit Ass'n of Fargo*, 345 N.W.2d 371, 375 (N.D.1984). When an agency is denied, the one asserting it must establish it by clear and convincing evidence. [*Id.*] We will not disturb a trial court's finding of agency unless it is clearly erroneous. *Asleson v. West Branch Land Co.*, 311 N.W.2d 533, 546 (N.D.1981). Agency is a matter of fact.

445 N.W.2d at 651. Frith's agency for RRC is a question of fact to be decided by the trial court under a correct view of the law of agency.

■ There was evidence that Frith knew about Kelby's poor production, other than through generalized knowledge of drought conditions. Kelby testified that Frith contacted him during the fall before harvest, and that he told Frith that he expected his crop production to be less than 500 pounds per acre, perhaps as little as 200 pounds per acre, or between 20% and 50% of the contracted quantity per acre. Richard Frith also testified that he contacted all growers later in the fall:

I contacted all of the growers that I worked with in October of 1988. And at that time, I determined from each one of them ... as to how much he had in the bin when he was done harvesting. How much he felt he had in the bin and those figures were submitted to Red River.

Notice to an agent is ordinarily notice to the principal. NDCC 3–03–05; *Missouri Valley Perforating, Inc. v. McDonald Investment Corporation*, 439 N.W.2d 812, 814 (N.D.1989). Evidence of Kelby's actual notice to Frith should be reconsidered by the trial court with a correct understanding of the law of agency.

■ RRC insists that, even if Frith was its agent, he did not have power to amend or modify the written contract. But notice and knowledge do not amend the contract; they implement the contract. Indeed, the excuse clause in the contract called for notice to the "contracting representative" of RRC. On appeal, RRC concedes that Frith was the "contracting representative"

designated in the excuse clause. It is clear that Frith was an agent for notice.

Nevertheless, RRC insists that notice of excuse was not given to both Frith and RRC in the precise form agreed upon. "Notice, knowledge or a notice or notification received by an organization is effective for a particular transaction from the time when it is brought to the attention of the individual conducting that transaction...." NDCC 41-01-11(27). Organization includes a corporation. NDCC 41-01-11(28). If Frith, as RRC's designated agent, seasonably knew from Kelby about the effect of his poor crop and reported that knowledge to his principal, RRC knew. If so, RRC could not in good faith claim a lack of notice. NDCC 41-01-13 (UCC 1-203) says, "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement."[4]

The trial court also refused to allow testimony and evidence on what Frith reported to RRC about Kelby's growing crop and harvest. In a trial without a jury, a court should not exclude evidence unless it is so hopelessly irrelevant or so clearly cumulative that it is a waste of time. In *Schuh v. Allery*, 210 N.W.2d 96, 99-100 (N.D.1973) this court warned trial courts that, in bench trials, exclusion of potentially relevant evidence was not good procedure. In a nonjury trial, entry of incompetent evidence will rarely be reversible error while exclusion of competent evidence will cause reversal whenever justice requires. In many cases since *Schuh*, this court has declined to reverse for admitting incompetent evidence. For a recent example, *see In Interest of M.M.S.*, 449 N.W.2d 574, 576 (N.D.1989). When necessary, however, this court has reversed for excluding competent evidence. *Signal Drilling Company, Inc. v. Liberty Petroleum Company*, 226 N.W.2d 148 (N.D.1975). This case requires reversal because RRC's knowledge of Kelby's actual notice to its agent, Frith, was relevant and important. Evidence of that knowledge was improperly excluded.

It is not this court's function to make findings of fact. *Kouba v. Great Plains Pelleting, Inc.*, 372 N.W.2d 884, 887 (N.D.1985). Because the trial court made findings of fact under a misapprehension of applicable law about Frith's agency and about the contractual importance of RRC's actual knowledge of Kelby's excuse, and because the trial court erroneously excluded relevant evidence bearing on RRC's actual knowledge, we reverse and remand for a new trial consistent with this opinion.

VANDE WALLE, LEVINE and GIERKE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of ERICKSTAD, C.J., disqualified.

---

**4.** Section 41-01-02(3) of the North Dakota Century Code (UCC 1-102) says that "[t]he effect of provisions of this title may be varied by agreement, except as otherwise provided in this title and except that the obligations of good faith, diligence, reasonableness, and care prescribed by this title may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable."

The contracted standard of written notice is not manifestly unreasonable and would ordinarily control the duty of the seller. If RRC did not in fact have actual, specific, and seasonable knowledge of Kelby's poor production as a result of drought, through its agreed "contracting representative," then the contract was breached by Kelby's failure to give the agreed written notice. In that case, the breach would be material, not insubstantial or trifling.