**WILLISTON COOPERATIVE CREDIT UNION, Plaintiff and Appellee,**

v.

**James PESEK, Defendant and Appellant.**

**Civ. No. 10750.**

Supreme Court of North Dakota.

March 13, 1985.

Michael J. Dostie, Williston, for plaintiff and appellee.

Rolfstad, Winkjer, McKennett, Kaiser & Stenehjem, Williston, for defendant and appellant; argued by Donna Murphy, Williston.

ERICKSTAD, Chief Justice.

James Pesek appeals from a judgment of the District Court of Williams County holding him liable to the Williston Cooperative Credit Union as guarantor of a promissory note. We affirm.

During 1979 and 1980, the Williston Cooperative Credit Union (hereinafter Credit Union) made several loans to Robert Williamson. The purpose of these transactions was to enable Williamson to establish a portable ready-mix and gravel business. Of seven loans made to Williamson prior to August of 1980, James Pesek signed as guarantor on two notes and Roger Sanders signed as guarantor on three notes. Pesek was married to Williamson's cousin, and Sanders was a life-long friend of Williamson.

Williamson had provided some used equipment and real estate, respectively, as collateral on the two prior notes which Pesek had guaranteed. The notes guaranteed by Sanders were secured by other equipment and livestock owned by Williamson.

Williamson's business encountered financial difficulties and by August of 1980 it was apparent that he would be unable to

make payments which were upcoming on several of the promissory notes. In an effort to keep the business afloat, Williamson and the Credit Union discussed consolidating the prior notes into two new notes, one guaranteed by Pesek and one guaranteed by Sanders, with payments spread out over a period of years.

Conflicting testimony was presented at trial regarding the refinancing agreement. Kelvin Miller, the loan officer who handled the transactions, testified that it was the agreement of all involved that the equipment listed as collateral on one of the prior Pesek notes would be "shifted" and listed as collateral on the new consolidated note to be guaranteed by Sanders. Pesek would guarantee a note consolidating the prior two notes which he had guaranteed, but only the real estate would remain as collateral. Pesek and Williamson, however, testified that there was no such agreement. They contend that it was their understanding that the collateral for the new note guaranteed by Pesek would be exactly the same as it had been on the two prior notes guaranteed by Pesek.

■■■ The parties also dispute the manner in which the new Pesek note was executed. A consumer credit disclosure form and promissory note, dated December 30, 1980, was admitted into evidence. This document, signed by Pesek, Williamson, and Williamson's wife, states on its face that the security for the note is: "FIRST REAL ESTATE MORTGAGE AND CO:MAKER."[1] Pesek testified that he signed a blank form on December 30, 1980, and that the form was filled in at some later time.

Miller, however, testified that, although the form had not yet been prepared when Pesek came in to sign it on December 30, 1980, Pesek waited while the form was filled in. Miller further testified that after the form was filled in by computer he and Pesek looked through the form and discussed it before Pesek signed it. He denied that Pesek signed a blank form which was filled in later.

Williamson's financial picture did not improve and in June, 1981, he petitioned for bankruptcy. The consolidated note guaranteed by Pesek came due on August 1, 1981. Because Williamson had been discharged through bankruptcy, the Credit Union demanded payment from Pesek. He refused, and the Credit Union commenced this action. Pesek filed an answer and counterclaim alleging that he had been discharged due to the Credit Union's fraud, misrepresentation, material alteration, lack of good faith, and unauthorized completion of the note.

The trial court found that the note was completed when Pesek signed it on December 30, 1980, and that Pesek had consented to all of the terms therein. Pesek has appealed, raising numerous issues.[2]

The dispositive issue on appeal is whether the trial court's findings that Pesek signed a completed note and that he consented to the terms thereof are clearly erroneous. We conclude that they are not.

1. Pesek does not contend that the note is ambiguous, and generally the terms of an unambiguous written agreement cannot be varied by extrinsic evidence. *Mid-America Real Estate & Investment Corp. v. Lund,* 353 N.W.2d 286, 289 (N.D.1984); *see* § 9–07–04, N.D.C.C. Pesek alleged at trial, however, that he was fraudulently induced to enter into the written agreement and that the Credit Union filled out an incomplete form, after he had signed it in blank, in a manner which did not express the true agreement of the parties. Under these circumstances, parol evidence was admissible. *See, e.g., Verry v. Murphy,* 163 N.W.2d 721, 730 (N.D. 1968); *Schue v. Jacoby,* 162 N.W.2d 377, 382 (N.D.1968); *Hartford Accident and Indemnity Co. v. Anderson,* 155 N.W.2d 728, 731 (N.D. 1968); *First National Bank, Bismarck v. O'Callaghan,* 143 N.W.2d 104, 106 (N.D.1966).

2. Although Pesek raises numerous issues of law, each of those issues is premised upon a different view of the facts than as found by the trial court. Each issue becomes relevant only if the court erred in its factual findings. Because we conclude that the trial court's findings of fact are not clearly erroneous, we find it unnecessary to discuss the legal issues raised by Pesek.

Our review of factual findings made by the trial court is governed by Rule 52(a), N.D.R.Civ.P. We have often stated that questions of fact decided by the trial court upon conflicting evidence are not subject to reexamination by this Court on appeal. *E.g., Hoge v. Burleigh County Water Management District,* 311 N.W.2d 23, 28 (N.D.1981); *Bladow v. Bladow,* 249 N.W.2d 917, 920 (N.D.1977); *Eakman v. Robb,* 237 N.W.2d 423, 429 (N.D.1975). We must give due regard to the opportunity of the trial court to appraise the credibility of the witnesses. *Hoge v. Burleigh County Water Management District, supra,* 311 N.W.2d at 28.

In this case, the opposing parties presented conflicting testimony regarding the execution of the documents and the parties' understanding of the refinancing agreement. The trial court had an opportunity to view the witnesses as they testified and assess their credibility. Where two parties present conflicting testimony on material issues of fact, we will not reexamine the trial court's findings based upon the testimony. On the record before us, we cannot conclude that the trial court's findings are clearly erroneous.[3]

The judgment of the district court is affirmed.

GIERKE, MESCHKE, LEVINE and VANDE WALLE, JJ., concur.

---

3.  Pesek argues that it is not logical to believe he would have given up collateral on loans he had guaranteed. We note, however, that in August, 1980, when the parties first discussed refinancing of Williamson's debt, the two prior notes guaranteed by Pesek were coming due within a few months, and were overdue on December 30, 1980, when Pesek guaranteed the final note. If the Credit Union had not agreed to refinance the debt, Pesek may have been faced with an immediate demand to pay over $40,000 on those prior notes. The record discloses that Williamson had submitted bids on numerous projects, and the parties still had hope that his financial situation might improve if given time. If that had occurred, Williamson may have been able to repay his debts and Pesek would have been totally exonerated on his guarantee.

The Credit Union contends that the transfer of collateral from the Pesek note to the Sanders note was to "even up" the collateral. When the refinancing occurred in late 1980, Sanders took on responsibility for two prior unsecured loans of Williamson. In addition, the Credit Union paid off a debt Williamson owed to a Montana bank, and this debt was added to the consolidated note guaranteed by Sanders. It was not illogical for the parties to redistribute the collateral under those circumstances, and it appears that the end result was that Pesek and Sanders guaranteed notes of approximately the same amount with collateral of approximately equal value.