2003 ND 59

**Brian ARGABRIGHT, Plaintiff and Appellant,**

v.

**Jeffrey G. RODGERS and Rhonda Rodgers, Defendants and Appellees.**

**No. 20020246.**

Supreme Court of North Dakota.

April 15, 2003.

Robert S. Rau, Bosard, McCutcheon & Rau, Ltd., Minot, for plaintiff and appellant.

Jeffrey G. Rodgers (argued), pro se, and Rhonda Rodgers, pro se, Towner, for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Brian Argabright appealed from a district court judgment dismissing, on its merits, his claim against Jeffrey and Rhonda Rodgers for a broker's commission on the sale of their mobile home. We hold the trial court's implicit finding that Clayton Gillmore, owner and operator of Discount Mobile Home Sales, Inc. ("Discount"), was Argabright's ostensible agent for purposes of selling the home is clearly erroneous. We further hold the district court did not err in concluding Argabright was not entitled to attorney fees under the listing agreement. We affirm in part, reverse in part, and remand with instructions the district court enter judgment awarding Argabright a broker's commission under his listing agreement with the Rodgers.

I

[¶ 2] On August 22, 2000, Argabright, as manager of Mobile Home Listing and Sales ("MHLS"), entered an exclusive listing contract with the Rodgers to sell their mobile home. After the home was listed, the Rodgers told Argabright they needed to immediately move the home from the lot on which it was located. According to the Rodgers' testimony, Argabright told them Clayton Gillmore, operator of Discount, could possibly move their mobile home to one of Discount's lots or to another lot in the area. Upon this advice, Rhonda Rodgers contacted Discount and arranged to have their home moved onto one of Discount's lots. A Discount salesperson sold the home within a week to a third party. At the closing, Discount received a ten percent commission on the sale. When Argabright discovered the mobile home had been sold through Gillmore at Discount, he sought payment of his commission from the Rodgers under the listing contract. When the Rodgers refused to pay it, Argabright filed this lawsuit for damages.

[¶ 3] After a bench trial, the district court denied Argabright's claim for a broker's commission on the sale of the mobile home, and explained its reasoning in its December 26, 2002, memorandum opinion:

It is undisputed that the [Rodgers] had owned a 1986 Medallion 16′x 85′ mobile home. It is also undisputed that the parties entered into a contract, whereby [Argabright] was hired as an agent to sell the unit.... The contract was entitled "MHLS Exclusive Listing Contract." The date it was executed on was August 22, 2000. Certain terms were enumerated on the document, and the commission to be paid was 10% of the sales price....

[T]he [Rodgers] had the mobile home taken to Discount Mobile Homes, which was owned and operated by Clayton [Gillmore]. This occurred on or about September 14th.... [Argabright] must have advised the [Rodgers] to contact Discount Mobile Homes.... [A]ccording to testimony of Jeffrey Rodgers, he talked to [Argabright] about where to relocate, and [Argabright] advised to move it to Discount Mobile Homes, since

they could handle the removal and would have the space. Consequently, as indicated, the Court believes under these circumstances that [Argabright] advised the [Rodgers] to contact Discount Mobile Homes about relocating their mobile home.

Next, Rhonda Rodgers testified that she had talked to Clayton [Gillmore] at discount Mobile Homes.... Rhonda Rodgers must have explained the circumstances surrounding the move to Mr. [Gillmore], e.g. the urgency, the locked gate, the listing for sale, etc., and the fact MHLS was involved.... [I]f Discount Mobile Homes was to become the new agent to sell for the [Rodgers], then with all of Mr. [Gillmore's] sales experience he would have had a contract executed. However, no contract was submitted into evidence.... It seems clear then, as Rhonda Rodgers testified, that Clayton [Gillmore] told her that any commission would be worked out between he and [Argabright]. Why else would Clayton [Gillmore] not have a contract signed with the [Rodgers]? Obviously, he knew the [Rodgers] already had an exclusive listing contract with [Argabright].

While the district court did not explicitly use the word "agency," its explanation contains an implicit finding that Gillmore was Argabright's ostensible agent for purposes of selling the mobile home and that payment of a commission to him by the Rodgers satisfied their obligation to pay a commission under Argabright's contract.

[¶ 4] On appeal, Argabright asserts Gillmore was not acting as his agent and the court misconstrued the listing contract in concluding Argabright was not entitled to a commission under the circumstances. The Rodgers concede Argabright had an exclusive listing agreement with them and was entitled to a ten percent commission upon sale of the mobile home. However, they assert they have satisfied their obligation to pay a commission by payment of a commission to Gillmore who, they claim, was acting in concert with Argabright.

## II

[¶ 5] A real estate agent who has an exclusive listing agreement and substantially performs is entitled to a commission. *Schlossman & Gunkelman, Inc. v. Tallman*, 1999 ND 89, ¶ 37, 593 N.W.2d 374. In that context, substantial performance means the expenditure of time, effort, or money. *Id.* The Rodgers concede that Argabright substantially performed under the listing agreement and is entitled to a commission. The Rodgers' payment of a commission to Gillmore could legally operate to satisfy their obligation to pay Argabright a commission under the listing agreement only if Gillmore, in accepting the commission, was acting as Argabright's agent.

[¶ 6] An agency is a relationship which results when one person, called the principal, authorizes another, called the agent, to act for the principal in dealing with third persons. N.D.C.C. § 3–01–01. Agency is either actual or ostensible. N.D.C.C. § 3–01–03. An agency is actual when the agent really is employed by the principal. *Id.* An agency is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent, who really is not employed by him. *Id.* An apparent or ostensible agency must rest upon conduct or communications of the principal which, reasonably interpreted, causes a third person to believe that the agent has authority to act for and on behalf of the principal. *Krank v. A.O. Smith Harvestore Products, Inc.*, 456 N.W.2d 125, 128 (N.D.1990). Agency is never presumed and, if an agency relationship is denied,

the party alleging agency must establish it by clear and convincing evidence. *Hector v. Metro Centers, Inc.*, 498 N.W.2d 113, 118 (N.D.1993). On appeal, we review a district court's finding of agency under the clearly erroneous standard of review. *Fleck v. Jacques Seed Co.*, 445 N.W.2d 649, 651 (N.D.1989). A finding of fact is clearly erroneous if it is not supported by any evidence, if, although there is some evidence supporting the finding, a reviewing court is left with a definite and firm conviction a mistake has been made, or if the finding is induced by an erroneous conception of the law. *Auction Effertz, Ltd. v. Schecher*, 2000 ND 109, ¶ 10, 611 N.W.2d 173.

[¶ 7] The evidence is undisputed that there was no actual agency between Argabright and Gillmore for selling the Rodgers' mobile home. Argabright testified he has never used Discount to sell a mobile home for him. Gillmore testified he had no business relationship with Argabright when Discount sold the Rodgers' home. To determine whether there was an ostensible agency, the court must look to Argabright's actions and decide whether there is clear and convincing evidence that Argabright's conduct or communications caused the Rodgers to reasonably believe Gillmore, operating Discount, had authority to sell their mobile home and collect a commission on Argabright's behalf.

[¶ 8] Jeffrey Rodgers testified that Argabright "referred us to Clayton Gillmore to move [our mobile home]." He testified that Argabright told him "we could move the trailer—get the trailer house moved to [Gillmore's] lot and sit it on his lot." However, Jeffrey Rodgers also testified that he did not at that time discuss any terms about who would sell the property once it was moved. Rhonda Rodgers also testified that Argabright referred her to Clayton Gillmore to get their mobile home

quickly moved off the lot on which it was currently located. She testified "I don't remember exactly what the conversation was, but he is the one that told me to contact Discount Homes. They move trailers. And he said that sometimes they put them on their lot there, and maybe they'll move it and put it on their lot. And that's exactly what I did." When asked whether she had a conversation with Argabright about whether he would still be selling their mobile home at the Discount lot she responded "he never had that conversation with me. I mean, he just suggested that I call them and that they would be able to help me." She also testified that she talked to Gillmore after the home had been moved and told him she had a listing contract with Argabright. She said Gillmore told her "they've had agreements in the past where if it's on his lot, if he sells it, he gets 10 percent. If, I believe, Brian sells it, he gets 10 percent. That is what he told me." While Gillmore's statements may have confused Rhonda Rodgers, we must look to the conduct and communications of the principal, not the alleged agent, to find an ostensible agency.

[¶ 9] The Rodgers' testimony demonstrates they did not talk to Argabright or inquire of him whether there was any agreement that Gillmore could act on Argabright's behalf for purposes of selling the mobile home and collecting a commission for the sale. There is no evidence showing conduct by Argabright which could cause a reasonable person to believe that Gillmore had been authorized by Argabright to sell the Rodgers' mobile home on his behalf. Rather, the Rodgers' testimony clearly shows Argabright referred them to Gillmore for the sole purpose of having their mobile home quickly relocated from its current location. We conclude, as a matter of law, there is not clear and convincing evidence of conduct by Arga-

bright upon which a reasonable person could conclude Gillmore was acting as Argabright's agent. We, therefore, conclude the district court's implicit finding there was an ostensible agency between Argabright and Gillmore is clearly erroneous. In the absence of an ostensible agency, there is no legal basis under these circumstances upon which the Rodgers can claim they have satisfied their obligation to pay Argabright a commission by having paid a commission to Gillmore. Argabright is therefore entitled to a judgment in his favor on his claim for a broker's commission.

### III

[¶ 10] Argabright asserts that upon reversing the decision on appeal the case should be remanded for further proceedings "as to whether [he] is entitled to a recovery of attorney fees as provided for by the listing agreement?" The only provision for attorney fees under the listing agreement reads:

Seller Agrees:

. . . .

To reimburse Company for any damages, losses, judgments, expenses, attorney fees & costs incurred in defending against any action by a Buyer hereunder, for any defects in the subject property or other damages or losses incurred by such a Buyer relative thereto, either in or out of court.

This provision only obligates the Rodgers, as sellers, to pay attorney fees to Argabright "in defending against any action by a Buyer hereunder." This case does not involve any action or claim of a buyer. We therefore affirm the district court's denial of Argabright's claim for attorney fees under the listing agreement.

### IV

[¶ 11] The judgment of the district court is affirmed in part, reversed in part, and remanded for entry of a judgment in favor of Argabright on his claim for a broker's commission.

[¶ 12] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.