2008 ND 138

Dave LAGERQUIST, Plaintiff
and Appellee

v.

Rudy STERGO a.k.a. Rudy Strgo, Just
Wire Corp., West Side Metals Corp.,
Midwest Industrial Metals Corpora-
tion, and John Doe, Defendants.

West Side Metals Corp., Defendant
and Appellant.

No. 20070285.

Supreme Court of North Dakota.

July 2, 2008.

David R. Phillips (argued) and Scott K. Porsborg (appeared), Smith Bakke Porsborg & Schweigert, Bismarck, ND, for plaintiff and appellee.

Jerome C. Kettleson (argued) and Zachary E. Pelham (appeared), Pearce & Durick, Bismarck, ND, for defendant and appellant West Side Metals Corp.

KAPSNER, Justice.

[¶ 1] West Side Metals Corporation ("West Side") appeals an amended judgment holding West Side liable for money damages, costs, and disbursements in the amount of $86,702. We affirm the amended judgment of the district court to the extent that it finds the existence of an actual agency relationship and awards damages, costs, and disbursements, but reverse the district court's holding that an ostensible agency relationship existed.

I

[¶ 2] This action arises out of a contract for the purchase of scrap metal between Rudy Stergo and Dave Lagerquist. Lagerquist brought a lawsuit against Stergo, a scrap metal purchaser, and West Side, another scrap metal purchaser, for breach of contract. Stergo is an individual scrap metal buyer, who purchases scrap metal and sells the metal to other larger scrap metal purchasers, like West Side, at a profit. Most of West Side's scrap metal purchases come from "peddler trade," meaning independent buyers, like Stergo, come to West Side's physical location with scrap metal to sell. West Side purchases its scrap metal from several hundred independent buyers each day.

[¶ 3] In the spring of 2005, Stergo learned Lagerquist had scrap metal and switch gear, which Lagerquist was interested in selling. West Side and Lagerquist both concede the contract to sell and purchase the material was formed on May 3, 2005, following a series of emails on that date, during which both parties agreed to specific pricing on various scrap metal held by Lagerquist. The contract provided Lagerquist and Stergo would meet in person on May 9, 2005, at which time Stergo would provide a down payment of $30,000 for the scrap metal purchase. The May 3, 2005, contract also provided Stergo would take delivery of the scrap metal on May 9, 2005. None of the May 3, 2005, emails make reference to West Side, and West Side does not appear in the final terms of the contract between Stergo and Lagerquist.

[¶ 4] Following the formation of the contract, Lagerquist showed the material to Stergo, and on May 9, 2005, Stergo gave Lagerquist $30,000 as a down payment on all of the scrap metal and switch gear he wished to purchase. Stergo began loading

and hauling away the purchased scrap metal on May 9, 2005.

[¶ 5] The $30,000 down payment Stergo gave to Lagerquist on May 9, 2005, was money supplied to Stergo by West Side. Lagerquist discovered the $30,000 check for the down payment was drawn against West Side's account, rather than Stergo's account, "quite a bit" after receiving the check on May 9, 2005. Lagerquist alleges, and the district court found, Stergo indicated he was associated with and a buyer for West Side on May 9, 2005, while Stergo was loading the scrap metal. After Stergo loaded part of the scrap metal onto trucks on May 9, 2005, Lagerquist gave Stergo two invoices totaling $115,009, the total price of the material, and reminded Stergo that Lagerquist needed the balance owing on the metal, $85,009, within two weeks under the terms of their contract.

[¶ 6] For unknown reasons, Lagerquist became concerned about the balance owed on the metal and called West Side on the telephone on May 10, 2005. Lagerquist testified an employee of West Side, Donna, told him West Side was familiar with Stergo and confirmed Stergo was a buyer for West Side. Before the two weeks for payment had elapsed, Lagerquist called Stergo to inquire about the payment of the balance owed. When Lagerquist contacted Stergo during the two-week payment period, Stergo said the scrap metal was contaminated with asbestos and lead and the metal had been buried. Stergo then contacted Lagerquist about three days after their initial telephone conversation and offered Lagerquist $10,000 to settle the unpaid portion of the contract price. Lagerquist refused Stergo's settlement offer. According to Lagerquist, Stergo also informed him that Stergo would not pay the remaining balance due on the scrap metal. Lagerquist learned Stergo had sold the scrap metal to another company, Midwest

Industrial Metals Corporation ("Midwest"), instead of West Side. Lagerquist also discovered Stergo had received a total of $136,502 in checks from Midwest for the scrap metal. Evidence also established Stergo paid West Side over $30,000 of the $136,502 Stergo had received, apparently to compensate West Side for the money West Side had advanced to Stergo for down payment on the scrap metal Stergo purchased from Lagerquist. Lagerquist had difficulty reaching Stergo and could not collect the balance due on the scrap metal from Stergo.

[¶ 7] Lagerquist brought suit against Stergo, West Side, and Midwest to collect the balance due on the scrap metal. Midwest negotiated a settlement with Lagerquist, relieving Midwest of further liability in this lawsuit. After a bench trial, the district court found Stergo was an agent of West Side and, as such, West Side was held jointly and severally liable for Stergo's breach of contract and ordered to pay Lagerquist damages and costs in the amount of $86,702.

[¶ 8] West Side appeals the amended judgment, arguing the district court erred in concluding Stergo was both an ostensible and actual agent of West Side and thus erred in assessing damages against West Side as Stergo's principal.

## II

[¶ 9] "Agency is generally a question of fact." *Stockman Bank of Montana v. AGSCO, Inc.*, 2007 ND 26, ¶ 11, 728 N.W.2d 142 (citing *Red River Commodities, Inc. v. Eidsness*, 459 N.W.2d 805, 810 (N.D.1990)). "Agency is never presumed, and if an agency relationship is denied, the party alleging agency must establish it by clear and convincing evidence." *Stockman Bank of Montana*, at ¶ 11 (citing *Argabright v. Rodgers*, 2003 ND 59, ¶ 6, 659 N.W.2d 369). We review a

district court's finding of agency under the clearly erroneous standard of review. *Argabright*, at ¶ 6 (citing *Fleck v. Jacques Seed Co.*, 445 N.W.2d 649, 651 (N.D.1989)).

[¶ 10] An agency relationship is created when one person, called the principal, authorizes another, called the agent, to act for the principal in dealing with third persons. *Argabright*, at ¶ 6 (citing N.D.C.C. § 3–01–01). Agency is either actual or ostensible. *Id.* (citing N.D.C.C. § 3–01–03). "An agency is actual when the agent really is employed by the principal." *Id.* (citing N.D.C.C. § 3–01–03). "An agency is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent, who really is not employed by him." *Id.* (citing N.D.C.C. § 3–01–03). "An apparent or ostensible agency must rest upon conduct or communications of the principal which, reasonably interpreted, causes a third person to believe that the agent has authority to act for and on behalf of the principal." *Id.* (citing *Krank v. A.O. Smith Harvestore Prods., Inc.*, 456 N.W.2d 125, 128 (N.D.1990)). "Agency is never presumed and, if an agency relationship is denied, the party alleging agency must establish it by clear and convincing evidence." *Id.* (citing *Hector v. Metro Ctrs., Inc.*, 498 N.W.2d 113, 118 (N.D.1993)). "A finding of fact is clearly erroneous if it is not supported by any evidence, if, although there is some evidence supporting the finding, a reviewing court is left with a definite and firm conviction a mistake has been made, or if the finding is induced by an erroneous conception of the law." *Auction Effertz, Ltd. v. Schecher*, 2000 ND 109, ¶ 10, 611 N.W.2d 173 (citation omitted).

## III

[¶ 11] In this case, the district court made specific factual findings with respect to the existence of both ostensible and actual agency. The district court found Lagerquist and Stergo entered into a contract for the sale and purchase of the scrap metal on May 9, 2005. The district court found that at the time the parties were negotiating and entering into the contract, relying on the premise that the contract was formed on May 9, 2005, "St[e]rgo indicated he was associated with West Side Metal and indicated he was a buyer for them." The district court found Stergo was "authorized to buy metal for West Side, [and] he was provided with advances to pay for the metal with the clear expectation that any metal he bought would be re-sold to West Side Metals." The district court found that after Lagerquist became worried about the balance due and called West Side on May 10, 2005, "he was told that St[e]rgo was acting for West Side Metal in purchasing scrap metal from Lagerquist." The district court further concluded that Donna, one of West Side's employees, "conferred with someone at West Side Metal before providing that information to Lagerquist." The district court found "Lagerquist reasonably relied on the information he received when he telephoned West Side Metal." The district court found "[Stergo] was assisted in allowing [himself] to present himself as an agent of West Side Metal." The district court based these factual findings on the testimony of several witnesses; thus, there is evidence in the record to support the district court's findings. *See, e.g., Williston Coop. Credit Union v. Pesek*, 363 N.W.2d 548, 550 (N.D.1985) ("The trial court had an opportunity to view the witnesses as they testified and assess their credibility. Where two parties present conflicting testimony on material issues of fact, we will not reexamine the trial court's findings based upon the testimony. On the record before us, we cannot conclude

that the trial court's findings are clearly erroneous.") (footnote omitted).

[¶ 12] While there is evidence in the record to support the district court's factual findings that (1) Stergo represented he worked for West Side on May 9 and May 10; (2) after May 9, Lagerquist called West Side to confirm Stergo's relationship with West Side; and (3) an employee of West Side confirmed the company knew Stergo, these facts do not lend themselves to the factual conclusion that ostensible agency existed. The district court erred in applying the law.

[¶ 13] In the parties' briefs and during oral argument, both Lagerquist and West Side concede the contract for the sale and purchase of scrap metal was formed prior to May 9, 2005. We agree; Lagerquist and Stergo negotiated and entered into the contract on May 3, 2005. An exchange of emails, occurring on May 3, 2005, provides that Lagerquist agreed to sell and Stergo agreed to buy scrap metal and switch gear held by Lagerquist; the price for the scrap metal was fixed in that exchange as were the terms for payment. May 9, 2005, is the date upon which Stergo actually met with and paid $30,000 to Lagerquist as a down payment. It was the agreed upon delivery date. On May 9, 2005, Stergo also began loading the scrap metal pursuant to the parties' May 3, 2005, contract.

[¶ 14] In order for ostensible agency to bind the principal to a contract made by an ostensible agent on the principal's behalf, the principal must cause or allow a third person to believe the agent actually has such authority. N.D.C.C. § 3–02–02. Here, the facts would have to show that at the point at which Lagerquist and Stergo actually entered into the contract on May 3, 2005, West Side's conduct or communications with Lagerquist, reasonably interpreted, caused Lagerquist to believe Stergo had authority to act for and

on behalf of West Side. *Argabright*, 2003 ND 59, ¶ 6, 659 N.W.2d 369 (citing *Krank*, 456 N.W.2d at 128). There is no evidence in this case to support such a conclusion.

[¶ 15] "A contract, be it oral or written, 'requires an offer, and acceptance of that offer, and mutual acceptance and understanding of the offeror and offeree as to the terms of the legally enforceable obligation thus incurred.'" *Lohse v. Atlantic Richfield Co.*, 389 N.W.2d 352, 355 (N.D.1986) (quoting *Cargill, Inc. v. Kavanaugh*, 228 N.W.2d 133, 138 (N.D. 1975)). "'[T]o be valid and enforceable, . . . a contract must be *reasonably* definite and certain in its terms so that a court may require it to be performed.'" *Delzer v. United Bank of Bismarck*, 459 N.W.2d 752, 758 (N.D.1990) (quoting *Union State Bank v. Woell*, 434 N.W.2d 712, 717 (N.D. 1989) (first alteration added; ellipsis and emphasis in original).

[¶ 16] In this case, the May 3, 2005, email exchanges constitute the formation of a written contract. Stergo offered to purchase the different types of scrap metal, offering specific prices per pound on the different types of metal Lagerquist had for sale. Lagerquist accepted Stergo's per pound offers on the different types of scrap metal, and Lagerquist offered additional quotes for the pricing of other scrap metal not mentioned in Stergo's email. In these emails, both parties agreed Stergo would submit a cashier's check to Lagerquist for $30,000 down payment on the scrap metal prior to taking delivery of the metal on May 9, 2005. The emails also provided the balance due on the metal would be paid within two weeks of the point at which Stergo took delivery of the scrap metal, on May 9 and 10, 2005. These emails constitute written offer and acceptance between Stergo and Lagerquist on May 3, 2005, and the emails provide

reasonably definite terms to which both Stergo and Lagerquist agreed. Therefore, as conceded by the parties, the contract was formed on May 3, 2005, and the district court erred as a matter of law in determining the contract was formed on May 9, 2005. *Balsam v. Buehner*, 278 N.W.2d 425, 427 (N.D.1979) (holding that where parties admitted to forming a contract and certain contractual provisions, the contract was formed as a matter of law and certain provisions could not be denied).

[¶ 17] Even assuming that May 9 had been the date of the contract, there is no evidence of West Side's communications or actions prior to the contract formation that would induce Lagerquist to believe Stergo had the authority to act for West Side. The district court's factual findings fail to show ostensible agency because the communications and conduct on the part of West Side, in telling Lagerquist that Stergo was one of its buyers, did not occur until May 10, 2005, *after* the contract had been formed. When Lagerquist entered into the contract, he did so without any communication with West Side. None of the May 3, 2005, email communications referenced West Side, and West Side did not take part in the email exchanges on that date. Thus, the district court erred as a matter of law in finding ostensible agency between Stergo and West Side for purposes of entering into a contract because West Side's communications with Lagerquist occurred after the contract was made, and would not have led Lagerquist to reasonably believe Stergo was affiliated with West Side when Lagerquist agreed to sell Stergo the scrap metal. We reverse the district court's holding that Stergo was an ostensible agent of West Side.

IV

[¶ 18] The district court found that, even if Stergo was not an ostensible

agent of West Side, he was West Side's actual agent. The district court found Stergo was an actual agent of West Side based on its factual conclusions that: (1) West Side advanced Stergo the $30,000 down payment necessary to secure Lagerquist's scrap metal; (2) Stergo purported to be affiliated with and a buyer for West Side while taking delivery of the metal; (3) Stergo used West Side's fax machine to send documents necessary to complete the scrap metal transaction; and (4) Stergo was "authorized to buy metal for West Side, [and] he was provided with advances to pay for the metal with a clear expectation that any metal he bought would be resold to West Side Metals."

[¶ 19] Actual agency exists only when "the agent really is employed by the principal." *Argabright*, 2003 ND 59, ¶ 6, 659 N.W.2d 369 (citing N.D.C.C. § 3–01–03).

[¶ 20] Lagerquist testified and the district court found that Stergo alleged he was affiliated with and a buyer for West Side. We have held that simply because a person purports to be an agent, this is insufficient to prove an agency relationship; "[a]gency cannot be proved by showing the declarations of the alleged agent." *Tostenson v. Ihland*, 147 N.W.2d 104, 109 (N.D.1966) (citation omitted). While Stergo's assertion of an agency relationship alone is not sufficient to establish the existence of an actual agency relationship between Stergo and West Side, the district court is not precluded from considering such an assertion in determining whether actual agency exists.

[¶ 21] The district court also relied upon the fact that Stergo used the fax machine of West Side throughout this transaction in determining actual agency exists. Stergo's use of West Side's fax machine, when coupled with additional facts, lends support to the district court's

conclusion that actual agency existed. We caution, however, because of the high burden placed on the party asserting the existence of an agency relationship, that the use of another individual's or company's fax machine or other office equipment is not strong or conclusive evidence of the existence of actual agency. *See Stockman Bank of Montana,* 2007 ND 26, ¶ 11, 728 N.W.2d 142 (citing *Argabright,* at ¶ 6) ("Agency is never presumed, and ... the party alleging agency must establish it by clear and convincing evidence."). The district court's consideration of Stergo's use of West Side's fax machine alone does not rise to the level of clear and convincing evidence, but is, nonetheless, a fact that may be considered with several others to support the district court's conclusion that actual agency existed.

[¶ 22] There is evidence in the record to support the district court's finding that West Side advanced $30,000 to Stergo and Stergo was authorized to purchase Lagerquist's scrap metal with the funds, with the expectation that the scrap metal be delivered to West Side after Stergo's purchase; this supports the district court's finding that actual agency existed.

[¶ 23] The president of West Side, Ian Morris, testified West Side had done business with Stergo on many occasions, providing him with advances to purchase scrap metal, which were intended to allow Stergo to purchase scrap metal to deliver to West Side. During trial, Morris testified about the nature of West Side's agreement with Stergo for this particular transaction while discussing Stergo's sale of Lagerquist's metal to Midwest rather than West Side:

Q Did [Stergo] tell you what he did?

A He told me he went to Midwest with the material and didn't bring it to me, and I was upset with that. *He was supposed to bring me the material with my money.*

(Emphasis added). There is evidence in the record to support the district court's conclusion that Stergo was authorized to buy scrap metal for West Side and West Side had a clear expectation that any scrap metal Stergo bought would be delivered to West Side.

[¶ 24] All of these factual findings, taken in their totality and supported by evidence in the record, support the district court's determination that actual agency existed under the definition of actual agency in N.D.C.C. § 3-01-03.

V

[¶ 25] West Side's final argument is that even if it fits the statutory definition of an actual principal under N.D.C.C. § 3-01-03, the district court erred in concluding Stergo was West Side's agent because Stergo falls into an exception to the general definition of actual agent. West Side argues the district court should have deemed Stergo an independent buyer or supplier as defined by the Restatement (Second) of Agency.

[¶ 26] West Side urges this Court to adopt a Restatement rule related to independent buyers or suppliers, which sets forth the following maxim regarding independent buyers and agency: "One who contracts to acquire property from a third person and convey it to another is the agent of the other only if it is agreed that he is to act primarily for the benefit of the other and not for himself." Restatement (Second) of Agency § 14K (1957). West Side further urges this Court to adopt the independent buyer analysis provided in comment (a), Restatement (Second) of Agency § 14K. The relevant portion of the comment reads:

Factors indicating that the one who is to acquire the property and transfer it to

the other is selling to, and not acting as agent for, the other are: (1) That he is to receive a fixed price for the property, irrespective of the price paid by him. This is the most important. (2) That he acts in his own name and receives the title to the property which he thereafter is to transfer. (3) That he has an independent business in buying and selling similar property.

Restatement (Second) of Agency § 14K cmt. a (1957).

[¶ 27] Using the above maxim and comment analysis, Stergo, who contracted with Lagerquist to purchase scrap metal, is regarded as an agent of West Side only if Stergo agreed with West Side to act primarily for West Side's benefit and agreed not to act in Stergo's own interests. Here, because Stergo derives a profit from the scrap metal he purchases and, while doing so in part for the benefit of West Side, does not conduct the purchase primarily for the benefit of West Side, West Side argues Stergo would not be defined as West Side's agent. West Side argues Stergo's primary purpose is more likely to create a profit for himself rather than to benefit West Side. Thus, under the Restatement's maxim, Stergo would not be considered an agent.

[¶ 28] Though North Dakota has not addressed the issues contained in Restatement (Second) of Agency § 14K, West Side points to several Texas state decisions and one federal case which have adopted this rule. See Rufenacht v. Iowa Beef Processors, Inc., 492 F.Supp. 877, 881 (N.D.Tex.1980) (cattle); Tarver, Steele & Co. v. Pendleton Gin Co., 25 S.W.2d 156, 159–60 (Tex.Civ.App.1930) (cotton); St. Louis & S.F.R. Co. v. Blocker, 138 S.W. 156, 162 (Tex.Civ.App.1911) (timber).

[¶ 29] We find that only a minority of jurisdictions have adopted the independent buyer or supplier exception contained in the Restatement. Therefore, we decline West Side's invitation to adopt the independent buyer or supplier exception.

## VI

[¶ 30] We reverse the district court's holding that an ostensible agency relationship existed between Stergo and West Side, because the district court erred as a matter of law in applying the law of ostensible agency to the formation of the contract. We hold the district court did not clearly err in determining Stergo was West Side's actual agent; there is evidence in the record to support the findings of the district court and the district court did not misapply the law of actual agency. We decline West Side's invitation to adopt the Restatement's independent buyer or supplier exception. Therefore, the amended judgment of the district court is affirmed to the extent that it finds actual agency and awards to Lagerquist damages, costs, and disbursements against West Side.

[¶ 31] GERALD W. VANDE WALLE, C.J., WILLIAM A. HERAUF, D.J., WIILIAM W. McLEES, D.J., and DANIEL J. CROTHERS, J.

[¶ 32] The Honorable WILLIAM A. HERAUF, D.J., and The Honorable WILLIAM W. McLEES, D.J., sitting in place of MARING, J., and SANDSTROM, J., disqualified.