# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 239

Greg Grengs,      Plaintiff

v.

Lisa Grengs,      Defendant and Appellee

and

GLG Farms, LLC,      Intervenor and Appellant

## No. 20230105

Appeal from the District Court of Renville County, Northeast Judicial District, the Honorable Anthony S. Benson, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

H. Malcolm Pippin, Williston, ND, for defendant and appellee.

Michael L. Gust, Fargo, ND, for intervenor and appellant.

**Crothers, Justice.**

[¶1]   GLG Farms, LLC appeals the district court's order for contempt. GLG argues the court erred in determining two new LLC members who bought an interest in GLG were not required to execute a mortgage previously ordered by the court, erred by concluding the addition of two new members had little practical impact on the order that a mortgage be executed, erred in concluding an agreement in bankruptcy court had little impact on the court's decision, and failed to sufficiently describe the terms of the mortgage. We affirm and conclude GLG's argument that North Dakota law does not have a standard mortgage is frivolous, warranting sanctions.

I

[¶2]   On July 20, 2017, Greg Grengs filed for divorce from Lisa Grengs, now Lisa Genareo. The divorce was granted and, on July 9, 2019, the district court ordered GLG's property be mortgaged to provide Genareo security for a "property settlement payment" valued at $1,300,000. Grengs then was the sole member of GLG and held complete control of its decision making. GLG was established by Grengs to hold ownership of Grengs' farm property and equipment. On March 3, 2020, Grengs paid Genareo $150,000. In September 2020, the district court granted Genareo's motion to place Grengs' and GLG's operation in receivership. The court ordered the receivership to control GLG's operation and make operating decisions for the LLC. Grengs personally and on behalf of GLG objected to the receivership. Grengs appealed the divorce and subsequent proceedings. *Grengs v. Grengs*, 2020 ND 242, 951 N.W.2d 260 (*Grengs I*). In *Grengs I*, this Court affirmed the district court's finding that Grengs was in contempt for failing to provide Genareo with a security interest and mortgage on property owned by GLG. *Id*. at ¶ 27.

[¶3]   Weeks later, Grengs and GLG filed for bankruptcy protection. Grengs petitioned the bankruptcy court to sell 5% of GLG for $75,000. On December 22, 2020, the bankruptcy court permitted Grengs to sell 1% of GLG for $15,000

to Ian Thomas and Myla Grengs, Grengs' step-son and daughter who was a senior in high school. Thomas and Myla Grengs each purchased a half percent of GLG. On January 1, 2021, GLG added Thomas and Myla Grengs as member-managers to the LLC and changed Grengs' position from president to member-manager. All member-managers have equal voting rights and management powers. GLG's operating agreement requires a majority vote approving entry into an agreement outside the normal course of business and to encumber land.

[¶4] While the bankruptcy action was pending, the parties negotiated a settlement agreement. That agreement incorporated a recital stating, "In order to develop a plan in which Grengs can pay the remainder of his obligation to Genareo, the Parties mediated their dispute with the assistance of Bankruptcy Judge William Fisher serving as mediator." On February 23, 2021, as a product of the mediation Grengs, GLG, and Genareo resolved the bankruptcy cases by agreeing to mortgage and payment terms, and executing a stipulation. Grengs signed the stipulation for himself and GLG. Grengs and GLG represented in the stipulation that they executed the agreement after receiving advice of counsel. All parties represented that, "intending to be legally bound, [they] have caused this Agreement to be executed effective as of the date above by their duly authorized representatives." They also represented they "will execute and deliver any document or instrument reasonably requested by any of them after the date of the Agreement that may be necessary or desirable to obtain the approvals required hereby and consummate or effectuate the intent of this Agreement." Thomas and Myla Grengs did not sign the stipulation, even though they were member-managers at the time.

[¶5] The stipulation stated Grengs and GLG "will file a motion seeking approval of this Agreement or dismissal of the bankruptcy cases from the bankruptcy court within three business days of its execution." Grengs and GLG did not obtain approval of the stipulation, but GLG confirmed at oral argument that the stipulation contained the terms of the agreement between all parties, and that it was enforceable without bankruptcy court approval.

[¶6] In accord with terms of the stipulation, and upon the parties' request, on March 30, 2021, the district court removed the receivership and released a

$115,000 bond to Genareo from Grengs. The next day the bankruptcy court dismissed the Chapter 12 proceedings for Grengs and GLG without objection from Genareo.

[¶7]   In September 2021, Genareo moved in state court to compel Grengs to comply with the payment terms and the mortgage requirement of the stipulation. On December 28, 2021, the district court heard arguments to determine if it held jurisdiction. Grengs petitioned the bankruptcy court to reopen the case and reassume jurisdiction; however, the bankruptcy court found it did not retain jurisdiction.

[¶8]   On May 5, 2022, Genareo filed another motion in district court to hold Grengs in contempt. On June 9, 2022, the court granted GLG's motion to intervene. GLG intervened 415 days after Grengs signed the bankruptcy stipulation for himself and GLG. On September 7, 2022, the court held a hearing on the contempt motions. On November 29, 2022, Genareo filed another contempt motion.

[¶9]   On February 17, 2023, the district court ordered Grengs and GLG to create a mortgage that matches the bankruptcy stipulation terms and provisions. The court found the new member-managers had "little practical consequence to the Court as regards the issue of the mortgage," the mortgage terms must match the agreement and did not require Genareo to renegotiate terms of the mortgage with GLG, even though the agreement had "no appreciable impact to this Court's current decision." The court ordered Grengs and GLG to use a "standard mortgage" that is "fully and properly executed" in favor of Genareo with provisions and terms "identical to the terms of the" bankruptcy stipulation. GLG timely appealed.

II

[¶10] GLG argues the district court erred by finding that adding two new member-managers to GLG had little impact on the court's order requiring GLG to execute a mortgage in favor of Genareo and that the bankruptcy stipulation did not appreciably impact its decision.

3

[¶11] This Court applies "de novo standard of review for questions of law, a clearly erroneous standard of review for questions of fact, and an abuse of discretion standard of review for discretionary matters." *Bertsch v. Bertsch*, 2006 ND 31, ¶ 6, 710 N.W.2d 113.

[¶12] In *Grengs I*, we affirmed the district court's order holding Grengs in contempt for failing to execute a mortgage on GLG's real estate, securing Genareo's payment of divorce proceedings. *Grengs I*, 2020 ND 242, ¶ 27. By this appeal GLG essentially asks us to revisit that holding after Grengs and GLG engaged in conduct aimed at avoiding the district court's order and after GLG stipulated to mortgaging GLG's property. The district court rejected Grengs' and GLG's latest efforts but did not articulate a legal basis for determining the two new member-managers and the bankruptcy stipulation did not alter GLG's obligation to execute a mortgage.

[¶13] The resolution of the issues raised in this appeal requires application of agency law. Application of agency law requires the answers to four questions. The first is whether Grengs' actions for GLG, including attending the mediation, negotiating the stipulation and signing the agreement for GLG, show he acted as GLG's ostensible agent who had apparent authority to conduct business? *See* N.D.C.C. § 3-02-02 ("An agent has such authority as the principal actually or ostensibly confers upon the agent."); *Transamerica Ins. Co. v. Standard Oil Co.*, 325 N.W.2d 210, 214 (N.D. 1982) (same); N.D.C.C. § 3-01-03 (defining actual and ostensible agency); *Hagel v. Buckingham Wood Prod., Inc.*, 261 N.W.2d 869, 877 (N.D. 1977) (Principal "is bound by the mere ostensible authority it created and permitted to continue."). Second, if Grengs acted as ostensible agent, did he bind GLG via agent-principal relationship? N.D.C.C. § 3-03-03 ("A principal is bound by acts of his agent under a merely ostensible authority to those persons only who in good faith and without ordinary negligence have incurred a liability or parted with value upon the faith thereof."); *Hagel*, at 874-75; *Pfliger v. Peavey Co.*, 310 N.W.2d 742, 747 (N.D. 1981). Third, did Genareo exercise diligence and prudence in determining whether Grengs acted with apparent authority on behalf of GLG? *Hagel*, at 875. Fourth, did GLG ratify or fail to timely disavow Grengs' acts once it learned of them? *Askew v. Joachim Memorial Home*, 234 N.W.2d 226,

4

237-38 (N.D. 1975) (ratification may be by express or implied conduct that is inconsistent with principal's intent to repudiate an agent's action); *Kahn v. Britt*, 765 S.E.2d 446, 455 (Ga. Ct. App. 2014) (principal ratifies agent's actions by failing to timely object to those actions); *Great American Fin. Servs. Corp. v. Natalya Rodionova Med. Care, P.C.*, 956 N.W.2d 148, 154 (Iowa 2021) (same).

A

[¶14] We combine the first two questions to consider whether Grengs was an ostensible agent of GLG who acted with apparent authority, and whether, acting as an ostensible agent, Grengs bound GLG to the bankruptcy stipulation as a consequence of an agent-principal relationship.

[¶15] "Agency is *generally* a question of fact." *Lagerquist v. Stergo*, 2008 ND 138, ¶ 9, 752 N.W.2d 168 (emphasis added). "[W]hether a principal-agent relationship exists under established facts is a question of law for the court." *First Nat. Acceptance Co. v. Bishop*, 187 S.W.3d 710, 714 (Tex. App. 2006). The court must review the record to determine if the facts conclusively establish that an agent-principal relationship exists. *Id.* at 715; *see also Ross v. Texas One Partnership*, 796 S.W.2d 206, 210 (Tex. App. 1990) (agency typically is a question of fact, but agency can be a question of law when "the facts are uncontroverted or otherwise established," which is shown by the "alleged principal [having] the right to assign the agent's task and the right to control the means and details of the process to be used to accomplish the task").

[¶16] Agency requires a principal to authorize an agent to act on its behalf, known as actual agency, or when a third party believes the agent is the principal's agent by "want of ordinary care," known as ostensible agency. N.D.C.C § 3-01-03; *Lagerquist*, 2008 ND 138, ¶ 10. Ostensible agency exists when "the principal intentionally or by want of ordinary care causes a third person to believe another to be the principal's agent." N.D.C.C. § 3-01-03. An agent receives authority to act from the principal directly or ostensibly. N.D.C.C. § 3-02-02. "'Ostensible authority' also is called 'apparent authority.'" *Transamerica Ins. Co.*, 325 N.W.2d at 214. "Ostensible authority is such as the

5

principal intentionally or by want of ordinary care causes or allows a third person to believe the agent possesses." N.D.C.C. § 3-02-02. "The scope of [ostensible] authority is determined not only by what the principal knows and acquiesces in, but also by what the principal should, in the exercise of ordinary care and prudence, know his agent is doing." *Transamerica Ins. Co.*, 325 N.W.2d at 214.

[¶17] "Ostensible authority [of an agent] is based upon the principle of estoppel." *McLane v. F. H. Peavey & Co.,* 72 N.D. 468, 8 N.W.2d 308 (1943). A principal is bound by acts of an ostensible agent that contracts with third parties who act in good faith with the agent, and "without ordinary negligence" the third party "incurred a liability or parted with value" in agreement with the agent and binding the principal. N.D.C.C. § 3-03-03; *see also Transamerica Ins. Co.*, 325 N.W.2d at 214 ("'Ostensible authority' also is called 'apparent authority.'").

> "[A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."

*Hagel*, 261 N.W.2d at 875. "Apparent authority has limited effect" because it "exists only to those third persons who learn of the manifestation from words or conduct for which the principal is responsible." *Id.*

[¶18] "A settlement agreement is a contract between parties." *Ryberg v. Landsiedel*, 2021 ND 56, ¶ 13, 956 N.W.2d 749. Grengs signed the bankruptcy stipulation on GLG's behalf to resolve the parties' disputes. Doing so, he acted as GLG's ostensible agent with apparent authority. *See Transamerica Ins. Co.*, 325 N.W.2d at 214 ("'Ostensible authority' also is called 'apparent authority.'"). GLG revised its operating agreement on January 1, 2021, to require a majority vote of its member-managers to approve land encumbrances and to enter into any agreement, instrument or other writings outside the ordinary course of business. On February, 23, 2021, Grengs, GLG, and Genareo signed the bankruptcy stipulation, including an agreement to mortgage GLG property.

6

Grengs signed the agreement personally and for GLG. The stipulation included representations that Grengs had authority to sign on behalf of GLG and that all parties entered the stipulation on advice of counsel. Thomas and Myla Grengs did not sign the stipulation although they were member-managers at the time.

[¶19] Grengs knew of the amended GLG operating agreement because he signed it on January 1, 2021. GLG, Grengs, Thomas, and Myla Grengs constructively, if not actually, knew the operating agreement details on January 1, 2021, yet in February Grengs alone signed the bankruptcy stipulation on behalf of GLG. GLG, the principal, allowed Grengs, the agent, to mediate the bankruptcy court proceedings on its behalf, and to negotiate and sign the resulting stipulation for GLG. These actions unmistakably manifest actions by Grengs for GLG that show agency. By participating in the mediation, engaging in the negotiations, and signing the stipulation, Grengs bound GLG to the agreement.

[¶20] At a minimum, Grengs' conduct for GLG in mediating the bankruptcy, and attendance and participation on behalf of GLG during bankruptcy stipulation negotiations and execution show he acted with apparent authority to bind GLG to the agreements. The district court's dissolution of the receivership and the bankruptcy court's dismissal of the bankruptcy proceedings also establish that those two judicial bodies believed Grengs had authority to represent and bind GLG in resolution of the matters. GLG created this impression by sending Grengs to participate in mediation and negotiations, having the same attorney represent both Grengs and GLG during the bankruptcy proceedings, and allowing Grengs to sign the stipulation for GLG. Under these facts, as a matter of law, GLG is bound by the stipulated promise to execute a mortgage.

B

[¶21] Because as matter of law Grengs was an ostensible agent of GLG who acted with apparent authority, the next legal inquiry is whether Genareo

exercised sufficient diligence and prudence before relying on Grengs' actions on behalf of GLG.

[¶22] The existence of an agency generally is a fact question. *Lagerquist*, 2008 ND 138, ¶ 9. Whether a third party exercised diligence and prudence to determine if the agent acted as an ostensible agent within its apparent authority is a question of fact. *Peavey*, 310 N.W.2d at 746-47. Questions of fact can become questions of law when the facts are not in dispute. *Bishop*, 187 S.W.3d at 714; *Ross*, 796 S.W.2d at 210.

[¶23] To resolve this inquiry a court is required to consider if a third party, who deals with agents, blindly trusted the agent's authority or statements. *Hagel*, 261 N.W.2d at 875. The third party must use "reasonable diligence and prudence to ascertain whether the agent is acting and dealing" within the scope of his powers. *Id.* The third party has the burden to determine "by the exercise of reasonable diligence and prudence, the existence or nonexistence of the agent's authority to act." *Id.*; *see also Hodson v. Wells & Dickey Co.*, 154 N.W. 193, 194 (N.D. 1915) (a party dealing with an agent "must, at his peril, ascertain what authority the agent possesses, and is not at liberty to charge the principal by relying upon the agent's assumption of authority"). The principal "may act on the presumption that third persons dealing with his agent will not be negligent in failing to ascertain the extent of his authority as well as the existence of his agency." *Hagel*, at 875.

[¶24] As applied to this case, the question is whether Grengs' and GLG's actions in bankruptcy court and during execution of the stipulation negated the need for Genareo to exercise additional diligence and prudence to determine if GLG permitted Grengs to act on its behalf as an agent. Here, this is a question of law because the facts are not in dispute. *Bishop*, 187 S.W.3d at 714; *Ross*, 796 S.W.2d at 210.

[¶25] The stipulation signed by Grengs, GLG, and Genareo resulted from a mediation and negotiations where Grengs participated for himself and GLG. GLG and Grengs were represented by the same attorney. In the stipulation, GLG and Grengs represented that they had authority to execute the

stipulation, and that they intended to be legally bound to terms of the stipulation. GLG, by Grengs' act as ostensible agent, and with apparent authority, is bound by the agreement. GLG allowed Grengs to sign the stipulation, which Genareo and two courts understood and relied on to mean that Grengs acted on behalf of GLG. GLG argues that Grengs lacked the authority to bind it to the stipulation, but only did so starting 415 days after the stipulation was signed. Before that, nothing and no one suggested Grengs acted without GLG's full authority. Under the facts and circumstances of this case, GLG's conduct reasonably allowed Genareo to believe GLG consented to Grengs acting as its agent. This conduct negated a need for Genareo to exercise further diligence or prudence.

C

[¶26] Because Grengs was an ostensible agent of GLG and acted with apparent authority, the final inquiry is whether GLG ratified Grengs' acts by retaining the benefit of the acts or failing to timely disavow the acts.

[¶27] The existence of an agency generally is a fact question. *Lagerquist*, 2008 ND 138, ¶ 9. Whether a principal timely disavowed an ostensible agent's acts generally is a question of fact. *Britt*, 765 S.E.2d at 455. So too is the determination whether the principal ratified an agent's actions. *Natalya Rodionova Med. Care, P.C.,* 956 N.W.2d at 154. Questions of fact can become questions of law when the facts are not in dispute. *Bishop*, 187 S.W.3d at 714; *Ross*, 796 S.W.2d at 210.

[¶28] Here, the facts are not in dispute and the issues of ratification, retention, and failure to timely disavow the acts are questions of law. *Bishop*, 187 S.W.3d at 714; *Ross*, 796 S.W.2d at 210.

[¶29] The stipulation was executed on February 23, 2021, and quickly thereafter the district court dissolved the receivership and the bankruptcy court dismissed its proceedings. Not until after Genareo filed several contempt motions seeking enforcement of the stipulation and execution of a mortgage and a motion to compel did GLG attempt to intervene and argue the mortgage could not be executed. It was not until this late date that GLG suggested that

9

refusal by the two new member-managers prevented it from executing the mortgage. GLG's reliance on the stipulation to obtain advantageous relief from both the district court and the bankruptcy court, and its 415-day delay in seeking to avoid its stipulated obligation to execute a mortgage drives the conclusion, as a matter of law, that Grengs' actions on behalf of GLG were both ratified and not timely disavowed. Therefore, under applicable law and the facts of this case, GLG ratified Grengs' actions by embracing their advantages and using them in judicial proceedings. Therefore, in view of GLG's acceptance of the benefits of Grengs' actions, and waiting more than 400 days to contest the legal consequences of Grengs' actions, GLG did not timely disavow Grengs' actions as GLG's agent.

[¶30] Although the district court did not articulate the legal reasons, it did not err by finding the new managing-members "had little impact" on its decision to require GLG to execute a mortgage because their signatures on the mortgage were not required. Nor did the district court err in determining the stipulation did not alter the requirement that GLG execute a mortgage securing Grengs' debt to Genareo.

## III

[¶31] GLG argues the district court abused its discretion by failing to sufficiently describe terms of the required mortgage and by repeatedly requiring execution of a "standard mortgage."

[¶32] The district court's requirements for a mortgage were part of its resolution of Genareo's contempt motion. "When reviewing a contempt sentence, the ultimate determination of whether or not a contempt has been committed is within the trial court's sound discretion. A trial court's finding of contempt will not be overturned unless there is a clear abuse of discretion." *Grengs I*, 2020 ND 242, ¶ 13. We review whether the court sufficiently described the terms of the mortgage under the abuse of discretion standard. "The district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process

10

leading to the reasoned determination." *Lehnerz v. Christopher*, 2022 ND 122, ¶ 4, 975 N.W.2d 585.

[¶33] GLG argued in its brief and stated seven times at oral argument that North Dakota does not have a standard mortgage form or that the Century Code does not provide for a standard mortgage. GLG represented at oral argument that, unlike Minnesota, North Dakota does not have a statutory standard mortgage. *See* Minn. Stat. Ann. § 507.15 (West) (Minnesota Uniform short form mortgage). GLG's statements ignore N.D.C.C. § 35-03-05, titled "[f]orm of real estate mortgage." The North Dakota statute states "[a] mortgage of real property may be made in substantially the following form" and provides mortgage terms. *Id.* The "standard form set forth in the statute is not a mandatory prerequisite to the creation of a valid mortgage between the parties to the transaction," but provides a guideline for the creation of a mortgage. *Poyzer v. Amenia Seed and Grain Co.*, 381 N.W.2d 192, 195 (N.D. 1986).

[¶34] GLG also argued "The district court's findings of fact and conclusions of law are woefully incomplete." Assuming N.D.R.Civ.P. 52(a) applies to contempt findings, *see State ex rel. City of Marion v. Alber*, 2013 ND 189, ¶ 15, 838 N.W.2d 458, the district court's findings here are adequate. The district court required that GLG use a standard mortgage that complies with terms of the parties' stipulation in bankruptcy. At the time of the district court's order, that agreement required Grengs to pay Genareo certain sums, secured by GLG's mortgage. The sums due Genareo were provided in paragraph 3 of the stipulation:

> "3. Settlement Payment. In settlement of his obligations under Paragraph 24 of the divorce judgment, Grengs will make payments to Genareo pursuant to one of the two following plans:
>
> * * * *
>
> b. Plan B: Grengs will pay Genareo the remaining One Million Thirty-five Thousand ($1,035,000) plus 8.5% interest accrued at the North Dakota statutory judgment rate for 2019, the year in which the judgment was entered, up to November 29, 2020. Commencing on the November 30, 2020 bankruptcy filing date,

interest will accrue on the $1,035,000 principal sum at the rate of five percent (5%) per annum. Grengs will make semi-annual payments of $41,230.50 to Genareo on June 30 and December 31 of each year. The semi-annual payment is based on the principal sum of $1,035,000 amortized over a 20-year period at a rate of five percent (5%) per annum. Payments will be applied first to interest and then to principal. The entire balance of principal and interest will be paid no later than December 31, 2024."

[¶35] Because a statutory mortgage form exists, and because the amounts due by Grengs, secured by a mortgage of GLG's real estate, were plainly provided in the stipulation, the district court did not abuse its discretion by ordering GLG and Grengs to create what the court described as a standard mortgage.

## IV

[¶36] Genareo argues GLG's appeal is frivolous and she should be awarded damages and costs under N.D.R.App.P. 38. Rule 38 "allows an award of attorney fees if the appeal is frivolous. An appeal is frivolous if it is flagrantly groundless, devoid of merit, or demonstrates persistence in the course of litigation which could be seen as evidence of bad faith." *Larson v. Larson*, 2002 ND 196, ¶ 13, 653 N.W.2d 869.

[¶37] Here, the district court did not fully explain the basis for its rulings. Nor did either party provide this Court with meaningful legal analysis to assist us in determining whether the district court erred. Therefore, we decline to award Genareo sanctions for the bulk of the appeal. However, GLG's argument regarding the district court's requirement that it execute a standard mortgage ignored N.D.C.C. § 35-03-05, miscited North Dakota law, and failed to recognize the repayment terms it agreed to in the bankruptcy court stipulation. To that extent, we deem GLG's argument frivolous and award Genareo $1,000.00.

## V

[¶38] We affirm the district court's order requiring GLG to execute a standard mortgage securing payment to Genareo of amounts GLG agreed to pay. We also

12

award $1,000 to Genareo as a sanction for GLG's frivolous argument that North Dakota law does not provide a standard mortgage that GLG must execute.

[¶39] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr

13